THE STATE OF OHIO, APPELLANT, *v.* ADAMSON, APPELLEE.

[Cite as *State v. Adamson* (1995), 72 Ohio St.3d 431.]

(No. 94–282—Submitted April 5, 1995—Decided July 5, 1995.)

432

*R. Alan Corbin,* Brown County Prosecuting Attorney, for appellant.

*R. Scott Croswell III* and *Elizabeth E. Agar,* for appellee.

*Betty D. Montgomery,* Attorney General, *Richard A. Cordray,* State Solicitor, and *Simon B. Karas,* Deputy Chief Counsel, urging reversal for *amicus curiae,* Ohio Attorney General.

---

PFEIFER, J. Evid.R. 601(B) governs the competency of spouses to testify against each other regarding criminal activity. The rule provides:

"Every person is competent to be a witness except:

" * * *

"(B) A spouse testifying against the other spouse charged with a crime except when either of the following applies:

"(1) A crime against the testifying spouse or a child of either spouse is charged;

"(2) The testifying spouse elects to testify."

The focus of Evid.R. 601(B) is the competency of the testifying spouse; in contrast, R.C. 2945.42 focuses on the privileged nature of spousal communications:

" * * * Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the known presence or hearing of a third person competent to be a witness * * *."

Thus, R.C. 2945.42 "confers a substantive right upon the accused to exclude privileged spousal testimony concerning a confidential communication * * *." *State v. Rahman* (1986), 23 Ohio St.3d 146, 23 OBR 315, 492 N.E.2d 401, syllabus. However, if the accused commits acts in the known presence of a third person, the accused may not assert the spousal privilege. *Id.* That is the case even if that third person is unable to testify. See *State v. Mowery* (1982), 1 Ohio St.3d 192, 1 OBR 219, 438 N.E.2d 897.

Spousal privilege and spousal competency are distinct legal concepts which interrelate and provide two different levels of protection for communications between spouses. Under R.C. 2945.42, an accused may prevent a spouse from testifying about private acts or communications. However, even when the privilege does not apply because another person witnessed the acts or communications, a spouse still is not *competent* to testify about those acts or communications unless she specifically elects to testify. While the presence of a witness

strips away the protection of the privilege, the protection provided pursuant to Evid.R. 601 remains.

In this case, the trial court was correct as to what Mrs. Adamson could *potentially* testify to. Since Darryl performed his acts in the presence of Freeman, he could not assert that those acts were privileged. However, the trial court ignored the level of protection the Rules of Evidence provide. While Evid.R. 601 was amended in 1991 to allow the spouse the decision as to whether to testify against the accused spouse (the decision formerly lay with the accused), the rule still contains important protections for the accused, since it deals with the competency of persons testifying against him.

The rule requires that the testifying spouse *elect* to testify against her spouse. An election is "[t]he choice of an alternative[;] [t]he internal, free, and spontaneous separation of one thing from another, without compulsion, consisting in intention and will." Black's Law Dictionary (5 Ed.1990) 517. Thus, under Evid.R. 601(B), a spouse remains incompetent to testify until she makes a deliberate choice to testify, with knowledge of her right to refuse.

Competency determinations are the province of the trial judge. *State v. Clark* (1994), 71 Ohio St.3d 466, 469, 644 N.E.2d 331, 334. Pursuant to Evid.R. 601(A), the trial judge must determine whether a child under ten is competent to testify by inquiring as to whether the child is capable of "receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." See, also, *State v. Frazier* (1991), 61 Ohio St.3d 247, 574 N.E.2d 483. Likewise, under Evid.R. 601(B), the judge must take an active role in determining competency, and make an affirmative determination on the record that the spouse has elected to testify. Just because a spouse responds to a subpoena and appears on the witness stand does not mean that she has elected to testify.

In this case, the court did not determine that the spouse had elected to testify. The court never informed Mrs. Adamson that it was her choice whether to testify and that the court could not force her to do so. Instead, after granting her immunity, the judge ordered her, "in the interest of justice," to testify. This was clearly error.

We agree with the appellate court that although Adamson's counsel failed to object to the error at trial, the error rises to the level of reversible plain error. Pursuant to the terms of Crim.R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. "Plain

error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899.

The outcome of Adamson's trial would certainly have been different had his wife not testified against him. Adamson was convicted of aggravated murder, that is, murder committed with prior calculation and design. Adamson's story, that he had accidentally stabbed Freeman during a scuffle which occurred when Freeman startled him, was contradicted in key respects by his wife's testimony. Chris Adamson destroyed her husband's story of surprise: she testified that she could see Freeman inside his truck, that she thought her husband opened Freeman's door, and that her husband even exchanged words with Freeman before pulling him out of the truck. That this damaging testimony came from Adamson's wife probably caused the jury to consider it to be especially credible. Chris's testimony certainly was the key factor in Adamson's conviction for aggravated murder.

Eliciting Chris Adamson's testimony without informing her of her right to not testify against her husband was plain error. We therefore affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and COOK, JJ., concur.