Darrell Barney appeals his conviction for four counts of rape, in violation of R.C. 2907.02(A), and assigns six errors for our review:
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT WHEN IT ADMITTED STATES [sic] EXHIBIT[S] 17 AND 18 WHICH WERE WRITTEN STATEMENTS AUTHORED BY THE ALLEGED VICTIM BEFORE TRIAL WHICH WERE HEARSAY.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT BY ALLOWING THE ALLEGED VICTIM HEATHER BARNEY AND WITNESS CHERYL BARNEY TO REMAIN IN THE COURTROOM AT ALL STAGES OF THE TRIAL, INCLUDING THE OPENING STATEMENT WHICH HAD THE EFFECT OF EDUCATING THE ALLEGED VICTIM AND OTHER THE [sic] WITNESS DENYING THE DEFENDANT THE RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AND A FAIR TRIAL.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT APPELLANT WHEN IT IMPROPERLY PERMITTED THE STATE OF OHIO TO INQUIRE ON REDIRECT EXAMINATION OF THE WITNESS, CHERYL BARNEY ON MATTERS WHICH SHE HAD NO PERSONAL KNOWLEDGE [OF] AND WHICH WERE BEYOND THE SCOPE OF REDIRECT EXAMINATION.
 FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN [sic] THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT BY FAILING TO CHALLENGE THE ARRAY AS MOVED BY THE DEFENDANT PRIOR TO THE IMPANELING OF THE JURY.
 FIFTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT-APPELLANT AND COMMITTED PLAIN ERROR BY ALLOWING THE DEFENDANT-APPELLANT'S WIFE TO TESTIFY WITHOUT INFORMING HER OF HER RIGHT NOT TO TESTIFY.
 SIXTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT-APPELLANT BARNEY AND COMMITTED PLAIN ERROR BY REQUIRING THE WIFE OF THE DEFENDANT-APPELLANT TO TESTIFY.
We overrule each of the assignments of error and affirm the trial court's judgment.
 I.
In January 1997, the Meigs County Grand Jury returned a sixteen-count indictment charging the appellant with committing various sexual offenses against his daughter, Heather Barney, over a three to four-year period. The indictment contained four counts of rape, in violation of R.C. 2907.02(A), eight counts of sexual battery, in violation of R.C. 2907.03(A), and four counts of felonious sexual penetration, in violation of R.C.2907.12(A). Heather Barney was between fourteen and seventeen years old at the time of the sexual offenses charged in the indictment.
The duly elected judge of the Meigs County Court of Common Pleas ("sitting judge") presided over the appellant's case through much of the pretrial procedure. On March 10, 1997, the parties appeared for a pretrial hearing, which was scheduled to be the final pretrial conference before commencement of trial. During this hearing, however, the sitting judge recused himself from the case.
The court stated on the record:
 It appears that one of the parties maybe worked for my wife, so the Court's going to have to recuse itself in this particular matter. The Court would hope that the entry would reflect that the Court is recusing itself. Basically, what that is, that gives the appearance of impropriety, the appearance of maybe not being fair to both sides. When that happens the Court must recuse itself. So the Court is going to do that.
The sitting judge asked the appellee's counsel to prepare a journal entry indicating his recusal from the case. The appellee agreed to submit an entry later that day. The appellee filed an entry addressing other matters discussed in the pretrial conference; however, the record reveals no entry addressing the sitting judge's recusal from the case.
Chief Justice Moyer of the Ohio Supreme Court signed a Certificate of Assignment, filed on March 25, 1997, which assigned a visiting judge to preside over the appellant's case. Between the sitting judge announcing his recusal and the visiting judge's formal assignment to the case, three jurors were excused from the array of potential jurors in this case. Although the record is unclear on the circumstances surrounding the excuse of these jurors, the parties agree that the sitting judge excused these jurors after disqualifying himself from the case.
Trial commenced in May 1997. Ms. Barney, eighteen years old at the time of trial, was the main witness for the prosecution. Ms. Barney testified that the appellant forced her to have sex with him in 1993, after she had completed eighth grade, and that he continued this course of conduct for the next three years. The frequency of the appellant's demands of sex from his daughter varied from two or three times a week to once a month. Ms. Barney also testified to specific instances of sexual activity with her father and recalled that, on numerous occasions, the appellant would make her wear various items of lingerie belonging to his wife. Ms. Barney testified that she did not tell anyone about her father's actions for a long time because she was scared of her father.
On cross-examination, the defense attacked Ms. Barney's credibility by focusing on her inability to recall certain events. For example, the defense asked Ms. Barney if she remembered the specific dates of her meetings with the prosecutor's office following her filing of charges against the appellant. Defense counsel inquired at length about Ms. Barney's recollection of her statements and whether she recalled if her statements changed in any way during any of the ten meetings she had with prosecutors. The defense also asked Ms. Barney about whether she had denied to anyone that sexual activity with her father was taking place. Ms. Barney admitted that she had denied sexual abuse to her brother, a close friend, and her stepmother, the last denial taking place approximately one month before she brought charges against the appellant.
On redirect examination, the prosecutor introduced two documents that Ms. Barney had written. The first, Exhibit 17, was a letter that Ms. Barney claimed to have written on September 26, 1996. The letter, which Ms. Barney said she wrote to herself to "get it off my mind," made reference to an incident earlier that month in which the appellant tried to have sex with her at their home. The letter, which corroborated testimony elicited during direct examination, stated that Ms. Barney refused because a friend was in another room. The letter also complained that the appellant would not let his daughter "go out or anything" unless she performed sexual acts with him. The second document, Exhibit 18, was a school writing assignment that Ms. Barney wrote on November 22, 1996. In this document, Ms. Barney generally complained about her parents and specifically made reference to sexual activity:
 Why does someone molest their child when they're only 7 or 8 years old and continue doing it the rest of their life at home. And if that child refuses to do favors that they . . . that child can't do a damn thing and gets picked on for every little damn thing in the world.
The trial court had barred the prosecution from introducing these written documents during direct examination. The defense also objected to the prosecution's introduction of the documents on redirect. However, the trial court allowed the documents as prior consistent statements offered to rebut an implied charge of recent fabrication or improper motive, pursuant to Evid.R. 801(D)(1).
Cheryl Barney, the appellant's wife and Heather's stepmother, also testified for the prosecution, over objections by the defense. During cross-examination, Cheryl Barney admitted that she had no direct personal knowledge about whether her husband committed sexual acts against her stepdaughter. She also testified to having asked the appellant numerous times about Heather Barney's allegations, receiving either outright denials or statements from the appellant that it was "her word against mine." On redirect examination, the prosecution confirmed that Cheryl Barney had never witnessed any sexual activity taking place between the appellant and Heather Barney. However, the prosecution asked if she had observed anything "that led you to believe that there was sexual activity going in the home that you were not a part of?" In response, Cheryl Barney testified to finding "soiled" T-shirts and towels leading her to believe that the appellant had cleaned himself off after having sex. She confronted the appellant about these items after his arrest and was told he had masturbated. In addition, Cheryl Barney testified to finding a blonde hair wrapped around her negligee and that her bedroom often smelled like "someone had just had sex in there." The record shows that Heather Barney had blonde hair.
The defense presented a number of character witnesses as well as testimony from the appellant. The appellant denied that he had ever touched his daughter sexually. The appellant also testified that Heather Barney did not respond well to the discipline he would impose on her. The appellant contended that Heather Barney wanted more "freedom" to do as she pleased, especially as she got closer to her eighteenth birthday. During closing argument, defense counsel characterized Heather Barney as an angry teenager who was upset with a perceived lack of freedom.
The jury returned guilty verdicts on all sixteen counts charged in the indictment. At sentencing, the prosecution and the defense agreed that the sixteen counts merged into four separate counts of rape. Accordingly, the trial court convicted the appellant of four rape counts and sentenced him to consecutive terms of eight to twenty-five years imprisonment. The court also classified the appellant as a sexual predator as defined in R.C. 2950.01. The appellant commenced this appeal.
 I.
In his first assignment of error, the appellant challenges the court's admission of Exhibits 17 and 18, the letter and school assignment written by Heather Barney. The appellant argues that the documents were offered to establish the truth of the contents asserted in them, i.e. that the appellant had engaged in sexual activity with his daughter. Therefore, the appellant insists that the documents were inadmissible hearsay. See Evid.R. 801(C), Evid.R. 802.
The appellee does not dispute the purpose of using the exhibits. However, the appellee points to Evid.R. 801(D)(1) as justification for the statements' admission during redirect examination. Evid.R. 801(D)(1) states:
A statement is not hearsay if:
 (1) Prior statement by a witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *.
When prior consistent statements are admissible under Evid.R. 801(D)(1), the statements are admissible to rehabilitate the witness and as substantive evidence of the matters asserted within them. See Motorists Mut. Ins. Co. v. Vance (1985),21 Ohio App.3d 205, 207. The appellee argues that the defense's cross-examination of Heather Barney constituted an implied charge of recent fabrication or improper influence or motive. The appellee contends, and the trial court agreed, that the exhibits were therefore non-hearsay within the meaning of Evid.R. 801(D)(1).
Generally, the admission or exclusion of relevant evidence rests within the sound discretion of the trial court and its decision to admit or exclude such evidence will not be disturbed absent an abuse of that discretion. State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of syllabus; State v.Reed (1996), 110 Ohio App.3d 749, 752. However, this case deals with the question of whether certain statements admitted by the trial court were hearsay. While the trial court has discretion to admit or exclude relevant evidence, it has no discretion to admit hearsay; Evid.R. 802 mandates the exclusion of hearsay unless any exceptions apply. Smith v. Seitz (July 9, 1998), Vinton App. No. 97CA515, unreported. Thus, we review de novo
the trial court's decision regarding whether a statement is hearsay or non-hearsay under Evid.R. 801. See id.; see, also,State v. Sorrels (1991), 71 Ohio App.3d 162, 165.
In this case, the appellant does not dispute that Heather Barney's prior statements were consistent with her testimony on direct examination, or that she was available for cross-examination about the statements. The letter written by Ms. Barney to herself recounted a specific act to which she testified on direct examination and the school assignment generally referred to her father's course of sexual conduct with her. The appellant contends that the statements were still hearsay because he had not made an express or implied charge of recent fabrication or improper influence or motive against Heather Barney. Instead, the appellant characterizes his cross-examination of Heather Barney simply as a continuous attack on her recollection. This, the appellant argues, challenged Heather Barney's credibility, but not by way of recent fabrication, improper influence or motive.
In reviewing the defense's cross-examination of Heather Barney, we are mindful that "a generous view should be taken of the entire trial setting in order to determine if there was sufficient impeachment of the witness to amount to a charge of fabrication or improper influence or motivation."Vance, supra, 21 Ohio App.3d at 207. Viewing the cross-examination in this light, we cannot characterize it as simply an attack on Heather Barney's "lack of recollection." The tenor of the defense's cross-examination equated a lack of recollection with an implication that Heather Barney was fabricating the whole story. For example, the defense established that Heather Barney could not remember specific dates of each alleged rape or sexual assault. The defense also established that Heather Barney talked to prosecutors on approximately ten different occasions after she had finally reported the sexual abuse to the police, but could not remember specifically how her story "changed" from one interview to the next. The defense asked Heather Barney if her story changed from the first meeting to the second, from the second to the third, and so forth. Although cross-examination along these lines tests recollection, it also implies that the alleged incidents never happened and that prosecutors may have influenced Heather Barney's story during her numerous meetings with them. See State v. Stringfield (1992), 82 Ohio App.3d 705,713 (prior statement admissible because cross-examination revealing lack of memory qualified as implication of recent fabrication). Further, the defense cross-examined Heather Barney about her past denials of sexual abuse. Heather Barney admitted that she told Cheryl Barney, her brother, and a friend on three separate occasions that her father was not sexually abusing her. The defense's focus on prior denials invited the jury to find that the allegations in this case were only a fabrication. Cf. State v. Greenwalt (Nov. 23, 1992), Tuscarawas App. No. 91AP090072, unreported (challenge to victim's silence was an implied charge that allegations were only a fabrication). Given the totality of the defense's cross-examination of Heather Barney, we find ample evidence of an implied charge that no sexual abuse ever occurred and that the victim was simply making it all up. Thus, we find no error in allowing the written documents as prior consistent statements pursuant to Evid.R. 801(D)(1).
The appellant raises an additional argument for exclusion of Exhibit 18.[1] The appellant contends that the school assignment Heather Barney wrote, though relevant, should have been excluded due to its prejudicial nature. The document makes reference to the appellant having sexually abused a child since she was "7 or 8 years old" and thus alleges acts for which the appellant was not on trial. Because of this reference, the appellant argues that the trial court should have excluded the document. Despite the document's probative value concerning appellant's conduct with Heather Barney, the appellant argues that the reference to acts unrelated to this case constituted unfair prejudice that substantially outweighed any evidentiary value. See Evid.R. 403(A).
Notably, the appellant objected to the document during trial only on hearsay grounds. At no time did the appellant's counsel either raise an objection based on Evid.R. 403(A) or ask that the court redact purportedly prejudicial portions of the document before allowing it to be read or displayed to the jury. The failure to raise this objection waives all but plain error. State v. Slagle (1992), 65 Ohio St.3d 597, 604. Plain error is an obvious error or defect in the trial proceedings affecting a substantial right of the accused. Crim.R. 52(B). Appellate courts exercise their powers to recognize plain error only under exceptional circumstances to avoid a miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, 94. Under this standard, we will reverse only if we decide that the outcome of the trial would have been different without the error. Id. at paragraph two of the syllabus.
If the defense had posed a timely objection based on Evid.R. 403(A), the trial court would have been obligated, at the very least, to redact the portions of the document referring to incidents occurring when Heather Barney was seven and eight years old. In this case, however, we cannot hold that admission of the document rises to the level of reversible plain error. Even if the trial court had excluded or redacted the written document, we cannot say with confidence that the appellant would not have been convicted. The trial in this case was essentially a credibility contest between Heather Barney and the appellant, who chose to testify on his own behalf. The jury apparently believed Heather Barney, disbelieved the appellant, and accordingly found the appellant guilty of rape. We cannot say that the jury's determination that Heather Barney was a credible witness, a determination that unquestionably led to its verdict, was inextricably intertwined with the contents of Exhibit 18. If the jury chose to believe Heather Barney, it would have found the appellant guilty, regardless of any reference to sexual acts outside the scope of the indictment. Conversely, if the jury did not believe Heather Barney, the contents of the written document would have been inconsequential; the jury simply would not have convicted the appellant. We cannot conceive of the one-sentence reference to molestation of a seven or eight year old child, unaccompanied by any explanation or detail, as making the difference between believing and disbelieving Heather Barney. Finding no probability of a different outcome but for the admission of Heather Barney's school assignment, we find no plain error. The first assignment of error is overruled.
 III.
In his second assignment of error, the appellant challenges the trial court's decision to allow Heather and Cheryl Barney to remain in the courtroom during defense counsel's opening statement. Although the trial court ordered a separation of witnesses so that none could hear any testimony prior to taking the witness stand, it allowed the witnesses to remain in the courtroom for opening statements. The appellant complains that the trial court's failure to exclude Heather and Cheryl Barney for the opening statements allowed them to view the defense's strategy and adjust their testimony accordingly. Thus, the appellant argues that these witnesses were allowed to testify to matters outside of their personal knowledge, resulting in a compromise of his right to a fair trial. This argument is unpersuasive.
The appellant cites Evid.R. 615, which states in part:
 At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses * * *. This rule does not authorize the exclusion of * * * a party who is a natural person * * *.
To the extent the appellant relies on Evid.R. 615 to establish error on the trial court's part, the reliance is misplaced. The plain language of the rule requires exclusion only so that the witnesses cannot hear testimony of other witnesses. The court's order accomplished this. The court's refusal to enforce a separation of witnesses beyond that was within its sound discretion. See Oakwood v. Makar (1983),11 Ohio App.3d 46, 48. In this case, we see no abuse of discretion in allowing the witnesses to remain in the courtroom for opening statement. If Heather and Cheryl Barney later tailored their testimony to the defense's opening statement, as the appellant complains, the defense had the opportunity to cross-examine these witnesses and test whether their testimony was truthful and within their personal knowledge.
Further, as the appellee argues, Heather Barney had a right to be present in the courtroom at all stages, so long as her presence did not undermine the appellant's right to a fair trial. Article I, Section 10a of the Ohio Constitution grants to crime victims a right to "reasonable and appropriate notice, information, access, and protection and to a meaningful role in the criminal justice process * * *." In furtherance of Article I, Section 10a, R.C. 2930.09 expressly allows a victim to be present for all stages of the case against a defendant, except grand jury proceedings. The appellant argues that Heather Barney's presence was not authorized by these provisions because her presence during opening statement undermined his right to a fair trial. For the same reasons noted in our discussion of Evid.R. 615, we disagree. Heather Barney was the first witness called during trial and, therefore, did not view any other witness's testimony. Moreover, any possibility that Heather Barney "tailored" her testimony to the opening statement and testified to matters outside of her personal knowledge was protected by the defense's opportunity to cross-examine her. The appellant's second assignment of error is overruled.
 IV.
The fifth and sixth assignments of error challenge the trial court's decision to allow Cheryl Barney to testify on behalf of the prosecution. The appellant complains that the trial court failed to ascertain whether Cheryl Barney was aware of her ability to disqualify herself from testifying against her husband. In support of his argument, the appellant relies onState v. Adamson (1995), 72 Ohio St.3d 431, which held that a spouse remains incompetent to testify against the other spouse under Evid.R. 601(B) until she makes a deliberate choice, with knowledge of a right to refuse to testify. Id. at syllabus. Because the court never informed Cheryl Barney of the right to refuse, the appellant argues that Adamson necessitates reversal. The appellant's argument is without merit, as it fails to recognize express exceptions to the rule regarding a spouse's incompetency to testify.
Every person is competent to be a witness except those outlined in Evid.R. 601. Evid.R. 601(B) identifies as incompetent:
 * * * A spouse testifying against the other spouse charged with a crime except when either of the following applies:
 (1) A crime against the testifying spouse or a child of either spouse is charged;
 (2) The testifying spouse elects to testify. (Emphasis added.)
Evid.R. 601(B) thus bars a spouse from testifying in a criminal trial against the other spouse unless she elects to do soor if the crime charged was committed against her or a child of either spouse. The Supreme Court's holding in Adamson is germane to the former exception, but not the latter. Evid.R. 601(B) makes clear that a spouse's incompetency to testify is lifted if the crime alleged involves a child of either spouse. In this case, the appellant's daughter was the purported victim of the crimes alleged in the indictment. Thus, the incompetency provisions of Evid.R. 601(B)(2) are not controlling. See Statev. Rahman (1986), 23 Ohio St.3d 146, 148; see, also, State v.Antill (1964), 176 Ohio St. 61, 64. The fifth and sixth assignments of error are without merit.[2]
 V.
The third assignment of error challenges testimony of Cheryl Barney on redirect examination. After Cheryl Barney testified on cross-examination that she had no direct personal knowledge of any sexual activity taking place between the appellant and Heather Barney, the appellee inquired as to whether Cheryl Barney had observed anything to indicate that sexual activity had taken place in the home. Cheryl Barney testified, over the defense's objection, to finding T-shirts and towels soiled with a distinctively smelly and sticky substance, indicating sexual activity. We review the trial court's admission of this evidence for an abuse of discretion. State v. Sage, supra;Renfro v. Black (1990), 52 Ohio St.3d 27.
The appellant first argues that the testimony was "beyond the scope of redirect examination." The appellant contends that the testimony concerning soiled T-shirts and towels was beyond anything the appellee had brought out on direct examination and, therefore, unfairly broadened the scope of redirect examination. In evaluating the proper "scope" of redirect examination, however, the general rule is that redirect examination is limited to matters inquired into by the adverse party on cross-examination of the witness. Holtz v. Dick
(1884), 42 Ohio St. 23, paragraph seven of syllabus; see, also,State v. Dominguez (Jan. 29, 1999), Hamilton App. No. C-980148, unreported. During cross-examination of Cheryl Barney, the defense specifically inquired into her lack of personal knowledge concerning sexual activity between the appellant and Heather Barney. The appellee aimed its redirect examination at establishing whether Cheryl Barney observed any circumstances in the house that were consistent with sexual activity which did not involve her. The soiled T-shirts and towels were probative of sexual activity, as was Cheryl Barney's testimony concerning the smell she often detected in the bedroom and the blonde hair she found on her lingerie. We find that this testimony was within the scope of proper redirect examination.
The appellant's second argument contends that the testimony was outside of Cheryl Barney's personal knowledge, and thus inappropriate under Evid.R. 602.[3] The appellant contends that Ms. Barney effectively speculated as to sexual activity between the appellant and Heather Barney, without personal knowledge that it ever happened. However, Cheryl Barney's testimony on redirect was limited to matters within her personal knowledge. Cheryl Barney personally found the soiled T-shirts and towels and heard the appellant explain them by saying he had masturbated. She personally observed the blonde hair on her clothing and personally detected a distinctive odor in her bedroom. Cheryl Barney did not testify to actual sexual activity and confirmed during redirect examination that she had not witnessed any sexual conduct between the appellant and Heather Barney. Because Cheryl Barney testified to circumstances she observed, Evid.R. 602 was satisfied.
The appellant's final argument concerning this testimony focuses on Evid.R. 403.[4] Even if the testimony was relevant to the issue of whether sexual activity took place between the appellant and Heather Barney, the appellant argues that the references to masturbation posed the danger of unfair prejudice. This contention is also without merit. To be excluded under Evid.R. 403, the probative value of relevant evidence must be substantially outweighed by the danger of unfair prejudice. Evid.R. 403(A). In this case, the probative value of Cheryl Barney's testimony was its corroboration, to some extent, of sexual activity in the home. Although Cheryl Barney did not witness sexual contact between the appellant and her stepdaughter, her observations provided some indicia of such activity. The "unfair prejudice" asserted by the appellant concerns the appellant's explanation of the soiled T-shirts and towels, i.e. that he had masturbated. We fail to see how the reference to masturbation would cause unfair prejudice to the appellant. The appellant's explanation for the soiled T-shirts and towels was not the reason that the prosecution offered Cheryl Barney's testimony. To the contrary, the appellee wanted the jury to infer that masturbation was not the reason for the soiled items, with the correct explanation being that the appellant cleaned himself off with those items after unlawful sexual activity with Heather Barney. Thus, the reference to masturbation is inconsistent with the notion of unfair prejudice. If the jury believed the masturbation explanation, it would have been less likely, not more likely, to find the appellant guilty of rape.
None of the appellant's arguments challenging Cheryl Barney's testimony is meritorious. We therefore overrule the third assignment of error.
 VI.
The appellant's fourth assignment of error raises an issue concerning the array of potential jurors from which the parties selected the trial jurors. The parties agree that the sitting judge excused three potential jurors from the jury pool after he had recused himself. The appellant contends that this act by the sitting judge was unauthorized in light of his recusal. The appellant further argues that the unauthorized excuse of the three jurors deprived him of an untainted jury. Thus, the appellant contends that the trial court, at the outset of trial, should have granted his motion to challenge the array of potential jurors.
While it is apparent that the sitting judge recused himself during a pretrial hearing, we note that the record lacks a journal entry corresponding to his oral pronouncement. Further, there is nothing in the record to indicate when the three jurors at issue were excused from the array and who authorized the recusal. R.C. 2313.16 authorizes only "the judge presiding or a representative of the judge" to excuse potential jurors and only for reasons recognized by statute. However, when denying the appellant's motion to challenge the array, the visiting judge confirmed that three jurors were excused prior to his assignment to the case. The appellee also concedes in its brief to this court that the sitting judge excused these jurors after his oral announcement recusing himself and prior to the visiting judge's assignment to the case. Accordingly, we assume that to be the case.
R.C. 2313.41 allows a party to challenge the array of potential jurors when it has not been selected or summoned according to law. Specifically, the statute provides:
 A challenge to the array may be made and the whole array set aside by the court when the jury, grand or petit, was not selected, drawn, or summoned, or when the officer who executed the venire did not proceed as prescribed by law. * * * [N]o indictment shall be quashed or verdict set aside for any such irregularity * * * if the jurors who formed the same possessed the requisite qualifications to act as jurors.
See, also, Crim.R. 24(E) (utilizing substantially similar language). We agree that a judge should have no further relationship to the case after disqualifying himself. SeeIn re Disqualification of Celebrezze (1992), 74 Ohio St.3d 1242,1243. However, even if we assume, without deciding, that the sitting judge's excuse of the jurors is an irregularity in the jury process addressed by R.C. 2313.41, we find no error warranting reversal in this case.
First, R.C. 2313.41 does not provide a statutory basis for reversing the appellant's conviction. The statute does not allow a verdict to be set aside for irregularities in the selection, drawing, or summoning of jurors if the jurors who formed the array were qualified to act as jurors. The appellant makes no argument that the potential jurors available and the jurors who actually served at trial were unqualified. Thus, R.C. 2313.41 does not provide a basis for reversing the appellant's conviction. See State v. Puente (1982), 69 Ohio St.2d 136,138.
Second, we find no constitutional problem with the appellant's conviction notwithstanding the arguably unauthorized excuse of potential jurors. The appellant correctly asserts that he had a constitutional right to a fair and impartial jury chosen from a fair cross-section of his community. See State v. Fulton (1991), 57 Ohio St.3d 120, 123
(citing Taylor v. Louisiana (1975), 419 U.S. 522, 528). However, his argument that the excuse of three jurors deprived him of this right is meritless. Absent a systematic and intentional exclusion of a particular group of persons from jury service, minor or technical defects in the jury selection process do not result in a constitutional infirmity warranting reversal. Puente, supra, 69 Ohio St.2d at 137-38; see, also,State v. Lane (1997), 118 Ohio App.3d 485, 490. In this case, the appellant points only to an unauthorized excuse of three jurors. There is no argument that a systematic exclusion of any particular group has taken place. Further, the Ohio Supreme Court has stated that "any claim that the jury was not impartial * * * is focused on the jurors who ultimately sat" rather than those who were excused. State v. Broom (1988),40 Ohio St.3d 277, 288 (citing Ross v. Oklahoma (1988),487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80). The appellant does not contend that any of the jurors at his trial lacked impartiality. The excuse of the three jurors provides no basis for finding that the appellant was deprived of a fair and impartial jury. We overrule the appellant's fourth assignment of error.
Having overruled each of the appellant's assignments of error, the judgment of the trial court is affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. and Abele, J.:
Concur in Judgment and Opinion.
For the Court
 BY: ___________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] Appellant does not question whether this exhibit was consistent with Ms. Barney's trial testimony.
[2] Apart from the spousal competency provisions in Evid.R. 601(B), there exists a privilege respecting marital communications between spouses during coverture. See R.C.2945.42. Either spouse may raise this privilege, so long as the communication was not within hearing of a third person. SeeState v. Henness (1997), 79 Ohio St.3d 53, 59. Even if a witness-spouse is competent to testify under one of the built-in exceptions to Evid.R. 601(B), the accused-spouse may invoke the marital communications privilege to prevent testimony on matters falling within the scope of the privilege.Adamson, supra, 72 Ohio St.3d at 433; Rahman, supra, 23 Ohio St. 3
d at 149. The appellant raises no issue on this appeal regarding whether the marital communications privilege barred any of Cheryl Barney's testimony.
[3] Evid.R. 602 states in part:
"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter."
[4] Unlike the Evid.R. 403 argument the appellant makes in relation to the first assignment of error, the appellant arguably raised this objection during trial concerning Cheryl Barney's redirect testimony. The trial transcript reveals that the defense argued about the "prejudicial value" of the testimony.