{¶ 74} I dissent only upon the finding of the majority that there was an effective waiver of spousal competency in this matter. *Page 25 
 {¶ 75} Both the State and defense concurred at trial, and indeed in their briefs and oral arguments, that defendant-appellant Larry Gray and Latasha McClain are husband and wife. Despite this fact, the State called McClain to testify against her husband, such testimony commencing the morning of December 3, 2007 (Tr. 993). She testified upon both direct and cross-examination, with no one raising the issue of spousal competency under Evid. R. 601.[2] She continued to testify the following day, until the issue of her competency was raised for the first time after the lunch hour break by way of a motion to strike (Tr. 1079). It appears from the transcript that no one had considered the issue previously.
 {¶ 76} The trial court was directed to two cases: State v.Adamson (1995), 72 Ohio St.3d 431, and State v. Brown (2007),115 Ohio St.3d 55, 2007-Ohio-4837, both concerning spousal competency. InAdamson, the syllabus of the opinion states, "[u]nder Evid. R. 601(B), a spouse remains incompetent to testify until she makes a deliberate choice to testify, with knowledge of her right to refuse. The trial judge must take an active role in determining competency, and must make an affirmative determination on the record that the spouse has elected to testify." In Brown, the Ohio Supreme Court reversed a murder *Page 26 
conviction because the trial court failed to instruct a witness on spousal competency and make a finding on the record that she voluntarily chose to testify. The Brown court held that failure to do so constitutedreversible plain error. Both Adamson and Brown observe that the decision to testify must be made with knowledge and understanding of the witness's right not to testify, and the decision must be made freely and voluntarily.
 {¶ 77} Here, the record reveals the court's participation in determining McClain's competency to testify as follows:
 {¶ 78} "THE COURT: Now, are you aware of the spousal privilege that you have in not testifying against your spouse?
 {¶ 79} "THE WITNESS: Yes, I am.
 {¶ 80} "THE COURT: Do you have any questions in regard to the privilege and what it means, or are you clear on what it means?
 {¶ 81} "THE WITNESS: I mean, overall-
 {¶ 82} "THE COURT: Overall, you are?
 {¶ 83} "THE WITNESS: Yes, overall, I am.
 {¶ 84} "THE COURT: Because what the court will tell you, that if you have any questions regarding the privilege and getting an additional explanation, you have the opportunity to speak to your lawyer, Mr. Spadaro, if you have any question about that. Do you have any questions? And would you like to speak to him? *Page 27 
 {¶ 85} "THE WITNESS: No, I don't.
 {¶ 86} "THE COURT: And you do not, at least at this time, wish to speak to Mr. Spadaro about it?
 {¶ 87} "THE WITNESS: No, not really.
 {¶ 88} "THE COURT: Okay. Has anyone coerced or threatened you to testify against your spouse, Larry Gray?
 {¶ 89} "THE WITNESS: No, they have not." (Tr. 1090-1092).
 {¶ 90} The court continued to question McClain about her opportunity to converse with her attorney and whether she was satisfied to continue testifying against her husband. While not having spoken to Spadaro, she acknowledged that she had a conversation on this issue with attorney Butler, another of her attorneys.
 {¶ 91} At no time did the court instruct McClain directly as to her right not to testify against her husband; the court merely confirmed that she had the opportunity to speak with her attorney about the issue. I believe that Adamson and Brown's requirement that the court "take an active role" in determining competency does not mean that the court can defer that determination to an off-the-record conversation between the witness and counsel outside the presence of the court.
 {¶ 92} Further, at no time did the court make a finding upon the record that McClain, properly instructed in the law of spousal competency, understood *Page 28 
her right not to testify and further, that her testimony was freely and voluntarily offered.[3]
 {¶ 93} Evid. R. 601(B) states that a spouse is not competent to testify against his or her spouse; hence, the burden is upon the State to establish waiver. I do not consider it dispositive that this issue was not recognized by the court or the State (and initially the defense) until the defense raised it toward the end of the wife's testimony; the heat of trial often distracts even the best and brightest. And, as inBrown, there is reason to believe that, if properly advised, McClain would, in fact, have chosen to testify. However, "[t]he rule inAdamson is absolute. Once it has been determined that a witness is married to the defendant, the trial court must instruct the witness on spousal competency and make a finding that he or she voluntarily chose to testify. *** Whether [the witness] would have still chosen to testify after a proper instruction was given to her is not relevant to the issue of error." Brown, supra, ¶ 60.
 {¶ 94} I am not suggesting that this error could not have been remedied after the fact; I believe it could have been. It was not done here, however. All the trial court did was ascertain that McClain had spoken to a lawyer, determine *Page 29 
she had not been threatened or coerced into testifying, and offer her an opportunity to speak to another lawyer and ask any questions she might have. In no way did this brief colloquy comport with the "absolute" requirement of Adamson and Brown.
 {¶ 95} A review of the facts as outlined by the majority makes clear that the testimony of McClain was singularly important in the conviction of Gray. Accordingly, under the authority of Adamson and Brown, the conviction should be reversed.
[2] Spousal competency refers to the issue of whether a spouse can testify against another spouse; the testifying spouse can waive his or her incompetency and choose to testify. This is not the same issue as spousal privilege, where the spouse against whom testimony of communications during coverture is offered may assert the privilege and prevent the other spouse from testifying.
[3] The record reflects that McClain, originally charged with aggravated murder along with her husband, entered into a plea agreement whereby she would plead guilty only to obstruction of justice, a felony of the third degree, premised upon her agreement to testify against her husband in his trial. When defense counsel tried to probe whether this agreement impacted the "voluntariness" of McClain's testimony, the State objected and the court forbade the inquiry. *Page 1