[Cite as *State v. Cheatham*, 2018-Ohio-5302.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 18-COA-019 |
| | : | |
| EAFROM O. CHEATHAM | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Ashland County Court
of Common Pleas, Case No. 18-CRI-
030


JUDGMENT:                                    AFFIRMED



DATE OF JUDGMENT ENTRY:           December 26, 2018



APPEARANCES:

For Plaintiff-Appellee:                          For Defendant-Appellant:

CHRISTOPHER R. TUNNELL                  MATTHEW J. MALONE
ASHLAND CO. PROSECUTOR                 10 East Main St.
COLE F. OBERLI                                  Ashland, OH 44805
110 Cottage St.
Ashland, OH 44805

*Delaney, J.*

{¶1}   Appellant Eafrom O. Cheatham appeals from the judgment entry of conviction and sentence of the Ashland County Court of Common Pleas.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   Appellant and his wife Ingrid have been married for 26 years and have two children together.  The children are now adults.  Appellant and Ingrid separated for a brief period in 2009 and during that time appellant was ordered to pay child support.  Although the events leading to this case occurred in 2017, the couple remains married, and their children are grown and out of the house, appellant still owes Ingrid back child support.

{¶3}   His payments to her are directly deposited onto an Ohio e-Quick Debit MasterCard (the "debit card") which is in Ingrid's name and is for her use.  She uses the card to purchase items and to get "cash backs" from retailers when she needs cash.  Ingrid has a PIN for the card.  She has sometimes allowed appellant to use the card, but she always verifies the balance; appellant had never used more than he was permitted to, and Ingrid trusted him.  Generally though she kept control of the card and the PIN.

{¶4}   During the summer of 2017, the marriage was extremely troubled because appellant spent much of his time with a paramour.  Ingrid wanted to repair the marriage.

{¶5}   On Thursday, July 27, 2017, Ingrid and appellant were together at Ingrid's house.  They had a conversation about staying married.  Appellant had a painting job the next morning in Salem and needed gas for his vehicle.  He said he didn't have any money.  Ingrid said he could use the debit card to put $5 of gas in his car.  She told appellant he had to bring the debit card back immediately after he used it at the gas station because

she would be needing the card throughout the day. His instructions were to go to Circle K, put $5 of gas in the car, and to return the debit card to Ingrid.

{¶6} Appellant was also supposed to get paid on Friday, July 28, so Ingrid believed he wouldn't have a problem paying her back. She and appellant had plans to go out with another couple on Friday evening so she believed she would be seeing him that day. On Thursday evening, Ingrid put the debit card on the nightstand. Appellant was already in bed and Ingrid fell asleep also.

{¶7} When she woke up on Friday morning, appellant and the debit card were gone. Appellant did not return. Ingrid attempted to contact him a few times during the day on Friday, but he did not respond. Ingrid "didn't panic" because appellant had told her he would be back that evening.

{¶8} The next day, Ingrid contacted the debit card company and learned that the balance on her card was zero. She had $130 on the card before she told appellant he could use $5, and she was expecting another deposit on the card soon. Ingrid requested tracking of the purchases on the debit card, canceled the card, and requested a new one. It would take 5 to 10 days for her to get a replacement card.

{¶9} Ingrid did not hear from appellant. She reported the theft of the card to the police two or three days later, when it was apparent appellant wasn't bringing the card back and wasn't offering any explanations.

{¶10} Ingrid did not see appellant again until August 21, 2017. Appellant told her he hadn't responded because he felt bad about taking the debit card and was "ashamed to show his face." The pair sat together in appellant's car and he showed her an

agreement he had drafted to pay her back. Ingrid signed it. The agreement she signed stated appellant paid her $20 toward the total he owed her.

{¶11} When the agreement was introduced at trial, Ingrid testified that "someone jumped a 1 in front of it," in other words, the agreement now stated appellant had paid her $120 toward what he owed her. Ingrid testified the agreement was changed after she signed it and in fact appellant has only paid her $20, not $120.

{¶12} While they sat in appellant's car, Ingrid recovered the debit card. Being "nosey," she rifled through appellant's glove compartment, found the debit card, and took it. When asked why appellant didn't stop her, she said "he knew it was mine—what could he say?" Ingrid cut up the debit card because the replacement was on its way.

{¶13} Ingrid acknowledged at trial that appellant told her several times he would make arrangements to pay the money back. As recently as a few days before trial, a relative was supposed to pay her the money, but their "wires got crossed" and the relative never showed up with the money.

{¶14} Tyesha, a daughter of appellant and Ingrid, testified that she spoke to her father a few days after he took the debit card. He told Tyesha he used the money to get his car fixed.

{¶15} The parties agreed to four stipulations at trial. First, they agreed that two photographs of appellant using the debit card at ATMs in Ashland were authentic. Second, they agreed that 56 recorded phone calls from appellant in jail were authentic. Third, appellant has been under court orders from 2009 through the date of trial to pay child support to Ingrid. Finally, between the dates of July 27, 2017 and July 28, 2017,

appellant stipulated that he withdrew $174 from the debit card at various locations throughout Ashland and Wayne counties.

{¶16} Appellant was charged by indictment with one count of theft pursuant to R.C. 2913.02(A)(2), a felony of the fifth degree, and one count of theft pursuant to R.C. 2913.02(A)(1), a misdemeanor of the first degree. Appellant entered pleas of not guilty and the matter proceeded to trial by jury. Appellant was found guilty as charged. The trial court ordered a pre-sentence investigation which has been filed under seal for our review. The trial court found appellant to be amenable to a community control sanction including, e.g., 180 days in the Ashland County Jail, restitution to Ingrid, a probationary period of five years, 30 hours of community service, and a substance-abuse assessment.

{¶17} Appellant now appeals from the judgment entry of his conviction and sentence.

{¶18} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶19} "I. THE TRIAL COURT ERRED IN FAILING TO INSTRUCT A WITNESS ON SPOUSAL COMPETENCY AND MAKE A FINDING THAT THE WITNESS VOLUNTARILY CHOSE TO TESTIFY."

{¶20} "II. APPELLANT'S TRIAL COUNSEL FAILED TO RENDER EFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO ASSERT SPOUSAL PRIVILEGE TO PREVENT A WITNESS FROM TESTIFYING."

{¶21} "III. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

I., II.

{¶22} Appellant's first and second assignments of error are related and will be considered together.  He argues the trial court should have instructed Ingrid on spousal competency and should have made a finding that she testified against her husband voluntarily.  Further, he argues defense trial counsel was ineffective in failing to assert spousal privilege to prevent Ingrid from testifying against him.  We disagree.

{¶23} Spousal competency as a witness is a separate issue from spousal privilege and appellant argues both play a role in the instant case.

{¶24} During cross-examination of Ingrid, the trial court sua sponte removed the jury to raise the issue of "spousal privilege" with the parties.  T. 51.  Appellee argued that "spousal privilege" (*sic*) did not apply pursuant to Ohio Evid.R. 601(B)(1) because Ingrid is the victim of the crime she's testifying about.  The trial court agreed and found the concern alleviated.  T. 53.  In light of the application of Evid.R. 601(B), the issue at hand was Ingrid's competence as a witness, not spousal privilege.

*Spousal competency*

{¶25} Ohio Evid. R. 601(B) addresses spousal competency and states: "Every person is competent to be a witness except: [a] spouse testifying against the other spouse charged with a crime except when either of the following applies: (1) a crime against the testifying spouse or a child of either spouse is charged; (2) the testifying spouse elects to testify."

{¶26} Appellant cites *State v. Adamson* as support for his argument that the trial court erred in failing to make a finding that Ingrid voluntarily elected to testify.  72 Ohio

St.3d 431, 650 N.E.2d 875 (1995), syllabus.  The Ohio Supreme Court has held that "a spouse remains incompetent to testify until she makes a deliberate choice to testify, with knowledge of her right to refuse. The trial judge must take an active role in determining competency, and must make an affirmative determination on the record that the spouse has elected to testify." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 54, citing *Adamson*, supra.  As appellee points out, though, *Adamson* (and by extension *Brown*) both involve testimony of spouse-witnesses who are not the victims of the crimes they're testifying about.  The competency of those spouse-witnesses is therefore at issue pursuant to Evid.R. 601(B)(2).

{¶27} In the instant case, Ingrid testified as the victim of the crime pursuant to Evid.R. 601(B)(1); see, *State v. Hanna*, 5th Dist. Knox No. 02CA000041, 2003-Ohio-6402, ¶ 16.  As appellee points out, that rule does not require the trial court to make a finding that the spouse voluntarily elects to testify.  *State v. Kelly*, 11th Dist. Ashtabula No. 2013-A-0008, 2013-Ohio-4755, ¶ 16 [not necessary pursuant to Evid.R. 601(B)(2) for trial court to instruct spouse-witness of her right to choose not to testify or for spouse-witness to elect to testify on the record];  *State v. Wilson,* 3d Dist. Putnam No. 12–05–20, 2006–Ohio–2000, ¶ 10, appeal not allowed, 111 Ohio St.3d 1412, 2006-Ohio-5083, 854 N.E.2d 1092   [crime charged was against defendant's daughter therefore wife unquestionably competent to testify]; *State v. Carpenter*, 83 Ohio App.3d 842, 844, 615 N.E.2d 1103, 1104 (12th Dist.1992) [no Evid.R. 601(B)(1) exception to requirement of finding where appellant not charged with crime against spouse-witness or their children];

{¶28} We find Ingrid was a competent witness pursuant to Evid.R. 601(B)(1) and the trial court did not err in not making a finding that she elected to testify.

*Spousal privilege*

{¶29} Appellant further argues, though, that defense trial counsel was ineffective in failing to assert spousal privilege to prevent Ingrid from testifying against him.  As noted supra, R.C. 2945.42 states in pertinent part:

> * * * *.  Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the known presence or hearing of a third person competent to be a witness, or in case of personal injury by either the husband or wife to the other, or rape or the former offense of felonious sexual penetration in a case in which the offense can be committed against a spouse, or bigamy, or failure to provide for, or neglect or cruelty of either to their children under eighteen years of age or their physically or mentally handicapped child under twenty-one years of age, violation of a protection order or consent agreement, or neglect or abandonment of a spouse under a provision of those sections. * * * *.

{¶30} In order for the spouse to claim privilege, the communication must have been made during the marriage. R.C. 2945.42. Furthermore, the spouses must be living as husband and wife in order for the privilege to apply. *Bentleyville v. Pisani*, 100 Ohio App.3d 515, 654 N.E.2d 394 (8th Dist.1995). "Where evidence shows that incidents of coverture have been relinquished, no legitimate purpose would be served by the exclusion of spousal testimony." *Id.* at 518.  If the parties are still legally married but were

separated and living apart, they were not living in coverture, the spousal privilege does not apply, and the challenged communications are admissible. *State v. Shaffer*, 114 Ohio App.3d 97, 101, 682 N.E.2d 1040 (3rd Dist.1996). Federal courts, likewise, have refused to extend this privilege to situations in which the spouses are separated and there is no real hope of reconciliation. *State v. Sparkman*, 6th Dist. Huron No. H-03-017, 2004-Ohio-1338, ¶ 5, citing *United States v. Singleton*, 260 F.3d 1295, 1297-1301 (C.A.11, 2001); *United States v. Porter*, 986 F.2d 1014, 1018-1019 (C.A.6, 1993).

{¶31} Appellee argues Ingrid and appellant were essentially separated at the time of the theft, therefore they were not living in coverture. "Coverture" has been defined as "[t]he condition or state of a married woman." *Bentleyville v. Pisani*, 100 Ohio App.3d 515, 517, 654 N.E.2d 394, 395–97 (8th Dist.1995), citing Black's Law Dictionary (6 Ed.1990) 366. Coverture originates from the antiquated principles that husband and wife are one in the person of the man, and the woman's legal existence is suspended during marriage. *Id.*, citing *State v. Mowery*, 1 Ohio St.3d 192, 193-194, 438 N.E.2d 897 (1982). The purpose of the spousal privilege is to "promote marital peace." *Id.*, internal citations omitted. In *Mowery,* the Supreme Court of Ohio adopted a balancing test to determine "whether the privilege against adverse spousal testimony promotes sufficiently important interests to outweigh the need for probative evidence in the administration of criminal justice." *Id.* at 199, citing *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980).

{¶32} We find *Bentleyville* applicable to the instant case because Ingrid and appellant were married, but largely living apart and contemplating ending the marriage. We find they were not living in coverture because "under the balancing test, the goal of

promoting marital peace is no longer compelling" where the parties are living apart, contemplating ending the marriage, and one of them is allegedly stealing from the other. See, *Bentleyville*, 100 Ohio App.3d at 518.

{¶33} The right to invoke the spousal privilege, where it exists, belongs to the nontestifying spouse. *State v. Perez,* 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104*,* ¶112. To be privileged, however, the communication at issue must be "confidential." *State v. Rahman,* 23 Ohio St.3d 146, 149, 492 N.E.2d 401 (1986). In assessing whether a communication was confidential, courts look to the language used, the nature of the message, the circumstances under which it was delivered, and other relevant facts. *State v. Bryant*, 56 Ohio App.3d 20, 22, 564 N.E.2d 709, 711 (6th Dist.1988); *Portsmouth v. Wrage,* 4th Dist. No. 08CA3237, 2009-Ohio-3390, 2009 WL 2003386, ¶ 21; *State v. Jackson,* 12th Dist. No. CA2011–01–001, 2011-Ohio-5593, 2011 WL 5146038, ¶ 30; *State v. Greaves*, 6th Dist. No. H-11-012, 2012-Ohio-1989, 971 N.E.2d 987, ¶ 18.

{¶34} In the instant case, appellant has also failed to point out what communication between Ingrid and appellant is privileged, and seems to refer to the act of theft itself. The purpose of the privilege, though, is to protect "intimate exchanges." *Greaves*, ¶ 19, and "that purpose is wholly lost where one spouse has threatened or physically assaulted the other." *See Bryant*, 56 Ohio App.3d at citing *State v. Antill,* 176 Ohio St. 61, 64, 197 N.E.2d 548 (1964). Such threatening or turbulent behavior is incompatible with the traditional premise of inter-spousal harmony out of which the confidences of marriage are imagined to flow. *Antill* at 64.

{¶35} Appellant does not point out, and we do not discern, the "confidential communication" defense trial counsel should have sought to protect. Appellant seems to

be arguing that spousal privilege would have prevented Ingrid from testifying about the act of theft itself.  R.C. 2945.42 lists several crimes as exceptions to the privilege, but the list is non-exhaustive. *Greaves*, 2012-Ohio-1989 at ¶ 20.

*No ineffective assistance*

{¶36} Appellant has raised his spousal-privilege argument in the context of ineffective assistance of trial counsel.  To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶37} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶38} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶39} In the instant case, we find that defense trial counsel did not err in failing to assert spousal privilege.

{¶40} Ingrid was a competent witness and the trial court did not err in failing to find she elected to testify against appellant. Nor did defense trial counsel err in failing to assert spousal privilege. Appellant's first and second assignments of error are overruled.

III.

{¶41} In his third assignment of error, appellant argues his theft convictions are against the manifest weight of the evidence because he had no intent to deprive Ingrid of the funds on the debit card. We disagree.

{¶42} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶43} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶44} Appellant was found guilty of theft pursuant to R.C. 2913.02(A)(1) and (2), which state:

No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent[.]

{¶45} Appellant argues that the greater weight of the evidence established he did not have the intent to permanently deprive Ingrid of the funds because he intended to repay her. "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). Pursuant to R.C. 2913.01(C), "deprive" means to do any of the following:

(1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

(2) Dispose of property so as to make it unlikely that the owner will recover it;

(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money,

property, or services, and without reasonable justification or excuse

for not giving proper consideration.

{¶46} We note our reading of the record established appellant paid Ingrid only $20 toward the balance he stole, despite the promises he made to Ingrid and their daughter. Appellant, or someone on his behalf, altered the agreement Ingrid signed to make it appear that appellant repaid considerably more than he ever did.   The evidence established appellant intended to withhold Ingrid's funds permanently, or for a period that appropriates a substantial portion of its value or use, and only made empty promises to repay the money when he was under threat of criminal sanctions.  We are unconvinced that appellant had any intention of repaying Ingrid.  "The state of a defendant's mind, his intent, is usually a question of fact that can be inferred from what the defendant said or did." *State v. Corley*, 12th Dist. Madison No. CA94-04-015, 1995 WL 22698, *2, citing *State v. Austin*, 52 Ohio App.2d 59, 68, 368 N.E.2d 59 (10th Dist.1976).

{¶47} Appellee presented Ingrid's uncontroverted testimony that appellant took the debit card and used all of the funds without her permission. We cannot find, given Ingrid's undisputed testimony that appellant did not have her permission to spend more than $5 on the card, that the jury lost its way. We find no manifest miscarriage of justice. See, *State v. Brumbaugh*, 5th Dist. Stark No. 2001CA00358, 2002-Ohio-2534.

{¶48} There was sufficient evidence from which the jury could conclude that appellant had no intention of repaying the money he took. See, *State v. Jewell*, 5th Dist. Delaware No. 01CAA03006, 2002-Ohio-226, motion for delayed appeal denied, 96 Ohio St.3d 1437, 2002-Ohio-3344, 770 N.E.2d 1047.

{¶49} Appellant's theft convictions are not against the manifest weight of the evidence and his third assignment of error is overruled.

## CONCLUSION

{¶50} Appellant's three assignments of error are overruled and the judgment of the Ashland County Court of Common Pleas is affirmed.

By: Delaney, J.,

Wise, John, P.J. and

Wise, Earle, J., concur.