JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Albert Foster, appeals from his convictions and sentences for two counts of rape and two counts of kidnapping. He asserts that the court denied him due process when it allowed the state to amend the indictment and the bill of particulars and denied him a continuance. He further contends that the court erred by overruling his motion to suppress. He complains that the court improperly admitted certain opinion testimony, expert testimony, other acts evidence, and the testimony of appellant's spouse. He claims the court erred by declining to instruct the jury on the lesser included offense of gross sexual imposition. He urges that the court also erred by overruling his motion of a judgment of acquittal, and argues that his convictions are contrary to the manifest weight of the evidence. Finally, he claims he was deprived of due process when the court sentenced him to consecutive terms of imprisonment on the rape charges. We find no prejudicial error in the proceedings below and therefore affirm appellant's convictions and sentences.
 Factual and Procedural History {¶ 2} Appellant was charged in a seventy-six count indictment filed February 2, 2005, with thirty-eight counts of rape and thirty-eight counts of kidnapping with sexual motivation specifications. A bill of particulars was filed March 25, 2005. Although appellant entered a plea of guilty to ten counts of *Page 4 
rape in September 2005, the court subsequently allowed appellant to withdraw that plea because he was not competent to plead guilty.
Motion to Suppress
 {¶ 3} The court began its hearing on appellant's motion to suppress immediately before trial began, but because a witness was unavailable, the court completed the hearing during trial with the agreement of counsel. At the hearing on the motion to suppress, Cleveland Police Detective Thomas Barnes testified that he was working basic patrol on December 28, 2004 when he was called to respond to a sexual assault on a juvenile at 3541 East 135th Street, Cleveland, Ohio. Appellant was present when Barnes and his partner arrived. The officers spoke to the victim and her sister, then called their supervisor to the scene. The supervisor, Sergeant Collins, instructed them to arrest appellant. Barnes testified that he arrested appellant and read him hisMiranda warnings. Appellant provided the officers with basic identifying information, including his date of birth, address, and social security number, and asked the officers what would happen next. When the officers told him that the victim would be taken to the hospital for a rape examination, appellant responded "that we might find some stuff on her because she seduced him, that he did have sex and he came on her stomach." The court overruled appellant's motion to suppress this statement, finding that "someone found probable cause to make an arrest," and *Page 5 
appellant was immediately given Miranda warnings. Therefore appellant's statements were not the fruit of an improper arrest.
 {¶ 4} Detective James McPike of the Cleveland Police Department Sex Crimes and Child Abuse Unit testified that he was assigned to investigate this case on December 29, 2004. He and Detective Jim Butler interviewed appellant on December 30, 2004. Appellant was already under arrest and was in the custody of the Cleveland jail at the time of this interview. Detective McPike informed appellant of his Miranda rights. Appellant executed a form indicating that he understood his rights and declined to speak to police without an attorney present. He also declined to make a written statement. However, when the detectives asked him again if he wanted to talk to them without a lawyer, he said, "Well, what you want to know. I can talk to you." Appellant then gave an oral statement. After some questioning, however, appellant again asked for counsel and the questioning stopped. The trial court concluded that appellant did not knowingly, intelligently and voluntarily waive his rights. Therefore, the court granted the motion to suppress this statement.
Amendment of Indictment/Bill of Particulars
 {¶ 5} Before the jury was called, the prosecutor orally moved the court to amend the bill of particulars with respect to Counts 1, 2, 13, 14, 25, 50, 75 and 76. With respect to Counts 1 and 2 — the first two counts of rape — the prosecutor sought to amend the bill of particulars to disclose that the appellant *Page 6 
engaged in vaginal intercourse with the victim at night at 3291 East 145th Street, in the victim's sister's bedroom. The bill of particulars with respect to the associated counts of kidnapping in counts 13 and 14 was likewise amended to disclose that these offenses occurred at 3291 East 145th Street, at night, in the victim's sister's bedroom. The prosecutor further moved to amend the bill of particulars with respect to the charge of rape at Count 25 of the indictment, to disclose that the rape involved vaginal intercourse between appellant and the victim in the victim's bedroom or her sister's bedroom at 3541 East 135th Street, between January 1 and February 29, 2004. The associated kidnapping count at Count 50 of the indictment was likewise amended to more specifically identify the time and location of the offense. Finally, with respect to the charge of rape at count 75, the prosecutor sought to amend the bill of particulars to disclose that the rape involved vaginal intercourse at approximately 2:00 a.m. in the basement. The associated kidnapping charge was also amended to indicate that it occurred at 2:00 a.m. in the basement. Defense counsel objected to the continued lack of specificity regarding the dates of the crimes charged in Counts 1, 2, 13, 14, 25, and 50. The court overruled this objection and granted the prosecutor's motion to amend the bill of particulars. At the prosecutor's request, the court dismissed the 68 charges not amended, viz., Counts 3-12, 15-24, 26-49, and 51-74. *Page 7 
 {¶ 6} At the appellant's request, the court delayed the start of testimony to allow appellant additional time to investigate where appellant lived at the time of the alleged rapes and kidnappings in 2001-2002.
Trial Testimony
 {¶ 7} At trial, the jury heard the testimony of the victim, B.S., and her sister, N.S.; Chad Britton and Heather Bizub, forensic biologists from the Bureau of Criminal Investigation; Tierra Anderson, a sex abuse worker for the Cuyahoga County Department of Children and Family Services; Stacey Csiszar, a registered nurse in the Emergency Department at MetroHealth Medical Center; and Cleveland Police Detectives Thomas Barnes and James McPike.
 {¶ 8} B.S. testified that she was born December 15, 1989, and has two children, ages three years and ten months. She lives with her sister, N.S. Since 2003, they have lived at 3541 East 135th
Street, Cleveland, Ohio; before that, they lived in an apartment at 3291 East 145th Street.
 {¶ 9} B.S. said that appellant lived with her and her sister since B.S. was eleven or twelve years old. He was like a father to B.S. and was N.S.'s boyfriend and later, husband. When B.S. was eleven years old, appellant would ask her to show him her breasts. When she was twelve or thirteen, appellant took her by the wrist and pulled her into her sister's room, pulled down her pants, the pulled out his penis and put it in her vagina. She said she did not consent to this. She also said appellant warned her not to tell anyone or she would be returned to *Page 8 
foster care. The same thing happened again approximately a week later. In April 2004, she learned she was pregnant. She gave birth to a daughter on October 5, 2004. She told her sister about what appellant was doing to her, but her sister did not believe her. She then recanted her story because she was afraid that their household would break up and she would be placed in foster care.
 {¶ 10} B.S. testified that on the night of December 28, 2004, appellant told her to come down into the basement, where he was watching television. B.S. said appellant took her over by a chair, pulled down her pants and had sexual intercourse with her. He ejaculated. She then went upstairs. The following day, she told N.S. what had happened and told her she had proof. N.S. called another sister, L.S., and they called the police. She was taken to MetroHealth Medical Center and was examined there.
 {¶ 11} N.S. testified that appellant moved in with her and B.S. in January 2001, while they were living in an apartment at 3291 East 145th Street. In April 2004, B.S. made allegations against appellant. N.S. did not believe her. B.S. recanted her allegations. N.S. married appellant in August 2004. In December 2004, B.S. again made allegations against appellant. N.S. called another of her sisters, L.S., and the police. The police arrested appellant. N.S. took B.S. to MetroHealth, where they performed a rape kit test. N.S. filed for divorce against *Page 9 
appellant in 2005; their divorce was finalized in May 2007. N.S. also testified that B.S. had a learning disability and was in special education classes.
 {¶ 12} Chad Britton, a forensic biologist with the Bureau of Criminal Investigation ("BCI"), testified that semen was found on the underwear in the rape kit taken from B.S. at MetroHealth, as well as on the rectal, perineal and vaginal swabs. Heather Bizub, another forensic biologist at BCI, extracted DNA from these samples and from known standards of persons involved in the case and compare them to determine whether they contributed to the sample. The DNA extraction from the vaginal swabs contained two DNA profiles, one consistent with B.S. and one from an unknown male. Three DNA profiles were found in the extractions from the victim's underwear; one was consistent with B.S., one with appellant, and one with the same unknown male whose DNA was found on the vaginal swab. Bizub concluded that appellant was the major contributor to the semen found on the underwear. Bizub also performed a paternity test on B.S.'s daughter born October 5, 2004, and determined that there was a 99.99 percent probability that appellant was the child's father.
 {¶ 13} Tierra Anderson testified that she was employed in the sex abuse intake unit at the Cuyahoga County Department of Children and Family Services. She and Detective McPike interviewed B.S. She further testified that the victim had recanted in some fifteen to twenty percent of the cases she had worked on, and she had determined some of the reasons why they recanted. She *Page 10 
said child victims sometimes recant their allegations of abuse out of fear, or out of love for the perpetrator or fear of what will happen to him or her. She also testified that she had observed changes in the behavior of abuse victims, such as depression, poor school work, and indiscriminate sexual activity.
 {¶ 14} Stacey Csiszar testified that she had been employed as a registered nurse in the emergency department of MetroHealth Hospital for seven years. She performed the triage on B.S. when she appeared at the emergency room on December 28, 2004 at approximately 9:00 p.m. B.S. reported that she had been sexually assaulted at approximately 2:00 a.m. that same day, and indicated she was wearing the same clothing she had been wearing at the time of the assault. She explained the basic procedure that is followed for the collection of evidence of an alleged rape, although she did not collect the evidence from B.S. in this case.
 {¶ 15} Detective McPike testified that he interviewed B.S. and prepared a typed statement. He also obtained swabs from appellant and from B.S.'s daughter, and interviewed N.S. B.S. told Detective McPike that she had also been sexually assaulted by Eric Nero, who was the father of N.S.'s daughter. Detective Barnes testified about the arrest of appellant and the statement he made at that time.
 {¶ 16} The jury found the appellant not guilty of the first two counts of rape and the first two counts of kidnapping, Counts 1, 2, 13, and 14. However, it *Page 11 
found appellant guilty of the remaining two counts of rape and two counts of kidnapping, Counts 25, 50, 75, and 76. The court merged the kidnapping charges into the associated rape charges, and sentenced appellant to three years' imprisonment on each of the rape charges, to be served consecutive to one another, for a total of six years of imprisonment.
 Law and Analysis {¶ 17} Appellant first asserts that the court deprived him of due process by allowing the state to amend the indictment through amendments to the bill of particulars. He contends that the state amended the substance of the offense, and therefore it should have resubmitted the matter to the grand jury.
 {¶ 18} Pursuant to Crim. R. 7(D), "[t]he court may at any time before, during or after a trial amend the indictment, information, complaint or bill of particulars, in respect to any defect, imperfection, or omission in form or substance * * * provided no change is made in the name or identity of the crime charged." The amendments to the bill of particulars in this case did not change the name or identity of the offense; they provided specific details about the offenses charged, such as the specific date, time, location, and sexual act involved. None of these facts were elements of the crimes charged. Instead, they were details which gave appellant notice of the conduct which constituted the offense and protected him from double jeopardy. See, e.g., State v.Egler, *Page 12 
Defiance App. No. 4-07-22, 2008-Ohio-4053; State v. Luks, Cuyahoga App. No. 89869, 2008-Ohio-3974. Therefore, we overrule the first assignment of error.
 {¶ 19} Appellant's second assignment of error complains that the court deprived him of due process by denying him a continuance after it allowed the state to amend the bill of particulars. Appellant asked the court to grant him "a couple of days" to investigate where appellant was living at the time of the offenses which allegedly occurred before appellant and N.S. were married. The court allowed counsel one day to do this investigation.
 {¶ 20} Appellant was found not guilty of the offenses which allegedly occurred before 2004, when appellant and N.S. were married. Therefore, appellant cannot show that he was prejudiced by the short continuance the court granted to him to investigate facts relevant to these crimes. Moreover, counsel could have determined appellant's residence at the time of the alleged offenses even before the bill of particulars was amended. While the amendment to the bill of particulars provided a more specific time frame for counsel's investigation, it did not raise any new issues that did not exist before. Therefore, we overrule the second assignment of error.
 {¶ 21} Third, appellant claims the court deprived him of due process by overruling his motion to suppress. He argues that the state failed to demonstrate that there was probable cause to arrest him without a warrant, and therefore "anything that followed had to be suppressed." *Page 13 
 {¶ 22} We agree with appellant that the state failed to demonstrate that it had probable cause to arrest appellant without a warrant. Officer Barnes did not testify about the statements that N.S. and B.S. made to him when he responded to their complaint of a sexual assault, or about his observations at the scene. Therefore, the record does not disclose the basis for the officer's determination that he had probable cause to arrest appellant.
 {¶ 23} Nevertheless, even if appellant's arrest was unlawful, [1] his statement may still be admissible if it was "an act of free will [sufficient] to purge the primary taint of the unlawful invasion."Wong Sun v. United States (1963), 371 U.S. 471, 486. "Miranda warnings are an important factor * * * in determining whether the confession is obtained by exploitation of an illegal arrest." Brown v. Illinois
(1975), 422 U.S. 590, 603. In addition, the court should also consider "the temporal proximity of the arrest and confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct." Id. at 603-04.
 {¶ 24} In this case, there is no indication that the appellant's arrest was the result of any intentional misconduct; Officer Barnes arrested appellant only after consultation with his supervisor. Moreover, Barnes gave appellant Miranda warnings at the time of his arrest. Appellant initiated the discussion *Page 14 
with Officer Barnes in the police car by asking him what would happen next. Only after learning that a rape kit examination would be conducted did appellant offer that the police "might find some stuff on her and that [B.S.] seduced him and they did have sex and he came on her stomach." This statement was not the result of police questioning. On the facts of this case, we find that appellant's statement to the police at the time of his arrest was an act of free will and not the result of any taint from an improper arrest. The third assignment of error is overruled.
 {¶ 25} Appellant next complains that Ms. Anderson and Detective McPike were allowed to provide opinion testimony about why sexual crime victims recant. Neither Ms. Anderson nor Detective McPike gave opinion testimony. They both testified generally about their personal experience with victims of sexual crimes. Neither opined about why B.S. recanted her earlier allegations of abuse against appellant. We must reject the premise of appellant's fourth assignment of error, and therefore overrule the assignment of error itself.
 {¶ 26} Fifth, appellant asserts that he was deprived of a fair trial when N.S. was allowed to testify that she did not believe B.S. when B.S. told N.S. in April 2004 that appellant had abused her. Appellant claims this testimony addressed the credibility of the victim, and therefore invaded the province of the *Page 15 
jury. Even if we were to agree that N.S. was opining about B.S.'s credibility, [2] we fail to see how appellant was prejudiced by this favorable testimony. Therefore, we overrule the fifth assignment of error.
 {¶ 27} Sixth, appellant asserts that Detective Barnes improperly referred to B.S. as "the victim" and to N.S. at "the victim's sister." The court sustained appellant's objections to this terminology and instructed the witness to use names. Appellant did not request any curative instructions. Therefore, appellant has not demonstrated that the court committed any error with respect to this testimony.
 {¶ 28} Appellant also complains that the court allowed Detective Barnes to say that he recorded the statement appellant made to him "[b]ecause I thought it was pretty important. He admitted to the assault." Appellant claims that Detective Barnes was opining about the defendant's guilt. However, his answer was responsive to the question put to him, about why he preserved a written record of the statement. The jury heard the statement appellant made to Detective Barnes and could reach its own conclusions. Therefore, we overrule the sixth assignment of error.
 {¶ 29} In the seventh assignment of error, appellant argues that he was denied his right of confrontation when the court prevented him from inquiring *Page 16 
whether B.S.'s sexual contact with the father of her second child was consensual. Whether the victim consented to sexual relations with another person at another time has no relevance to the question whether she consented to sexual relations with appellant. Therefore, the court did not abuse its discretion or deny appellant his right of confrontation by sustaining the state's objection to this inquiry.
 {¶ 30} Appellant next complains that the court allowed evidence of other non-consensual sexual activity between B.S. and appellant without giving a limiting instruction. Appellant does not specify where in the record he requested a limiting instruction. We need not consider any error appellant did not bring to the trial court's attention. State v.Williams (1977), 51 Ohio St.2d 112. Therefore, we overrule the eighth assignment of error.
 {¶ 31} The ninth assignment of error claims the court erred by allowing appellant's wife, N.S., to testify without his consent. The relevant law regarding spousal privilege is set forth in R.C. 2945.42
and Evid. R. 601(B). R.C. 2945.42 provides in pertinent part that "[h]usband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the known presence or hearing of a third person competent to be a witness * * *."
 {¶ 32} Evid. R. 601(B) provides that a spouse is incompetent to testify against the other spouse charged with a crime unless the crime was committed *Page 17 
against the testifying spouse or a child of either spouse, or the testifying spouse elects to testify.
 {¶ 33} In this case, we cannot say that N.S.'s testimony violated Evid. R. 601(B). There is no evidence that N.S. did not elect to testify. N.S. testified that she had asked appellant whether B.S.'s allegations were true in the presence of a police officer as well as B.S. and L.S. There is no evidence of appellant's response. This testimony does not violate R.C. 2945.42. Accordingly, we overrule the ninth assignment of error.
 {¶ 34} Appellant next argues that the court erred by declaring a prosecution witness to be an expert in the jury's presence. The prosecutor offered Mr. Britton as an expert in his field; the court only said "yes, and overruled appellant's objection. The court did not expressly declare Britton to be an expert, thereby creating the appearance that the court approved the witness.
 {¶ 35} Cf. United States v. Johnson (6th Cir. 2007),488 F.3d 690, 697-98. Accordingly, we overrule the tenth assignment of error.
 {¶ 36} Appellant complains that the court refused to instruct the jury on the charge of gross sexual imposition. The court instructed the jury on the charge of gross sexual imposition with respect to the offense that occurred on December 28, 2004, but not with respect to the offense that occurred between January 1 and February 29, 2004. Appellant's counsel did not request such a charge. He only requested a sexual battery charge on those counts. As noted *Page 18 
earlier, we need not address alleged errors that were not brought to the trial court's attention. State v. Williams (1977), 51 Ohio St.2d 112. Therefore, we overrule the eleventh assignment of error.
 {¶ 37} The twelfth assignment of error contends that the evidence was insufficient and his convictions were contrary to the manifest weight of the evidence. However, appellant does not argue the sufficiency of the evidence. He only argues that B.S.'s testimony at trial was not credible because B.S. previously told the police that she had made up allegations of sexual assault by appellant. The jury could and did consider B.S.'s prior contradictory statements in assessing her credibility. Moreover, B.S.'s testimony was not the only evidence against appellant. There was also scientific evidence that appellant was the father of B.S.'s daughter and that appellant's semen was on B.S.'s underwear. Based upon this evidence, we cannot say that the jury clearly lost its way or created such a manifest miscarriage of justice that a new trial must be ordered. Accordingly, we overrule the twelfth assignment of error.
 {¶ 38} Finally, appellant contends the court erred by sentencing him to consecutive three year terms of imprisonment. He argues that there is a statutory presumption in favor of concurrent sentences. While R.C. 2929.41(A) did formerly create such a presumption, the Ohio Supreme Court in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, ¶ 97, "severed and excised in [its] entirety" R.C. 2929.41, and eliminated the fact-finding requirements for *Page 19 
imposing consecutive sentences. The court concluded that the trial courts have full discretion to impose a prison sentence within the statutory range, without giving reasons for imposing consecutive terms. Id. at ¶ 100.
 {¶ 39} The trial court in this case imposed consecutive minimum terms of imprisonment in this case, for a total of six years' imprisonment. The total sentence imposed was less than the maximum sentence of ten years' imprisonment that was separately available for either of the rape charges. This sentence was within the statutory range of sentences available for these charges. Appellant has not demonstrated that the court abused its discretion in imposing this sentence. Therefore, we overrule the thirteenth and final assignment of error.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 20 
SEAN C. GALLAGHER, P.J., and PATRICIA ANN BLACKMON, J., CONCUR.
[1] A conclusion we do not reach. We conclude that the state failed to demonstrate that it had probable cause to make the arrest, not that the evidence did not exist.
[2] N.S. was asked about her response to B.S.'s allegations of abuse in April 2004, not whether she believed B.S. at the time of trial. *Page 1