JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Larry Gray, appeals his conviction for aggravated murder. After a thorough review of the record, and for the reasons set forth below, we affirm.
 {¶ 2} On October 13, 2006, appellant was indicted on one count of aggravated murder with one-and three-year firearm specifications, and one count of having weapons under disability. Appellant waived his right to a jury on the second count. The jury trial began on July 11, 2007, but ended in a mistrial. Appellant was found guilty of having weapons while under disability by the trial court based on the evidence presented at trial. On November 26, 2007, a second jury trial commenced on the charge of aggravated murder.
 {¶ 3} At trial, the state called several witnesses to the events leading up to and following the murder of DeJuan Harvey on May 2, 2006. Darnetta Simpson testified that near dawn on May 2, 2006, she was awakened by a gunshot and the sound of man saying, "Oh man, you shot me." She testified she looked out her window and saw a man shoot the victim four or five more times; she then called the police. Ms. Simpson described the assailant as a stocky man, approximately 5'6" or 5'7" tall, wearing dark jeans and a hoodie-style sweatshirt. She then testified she watched the shooter "skip," then run from the scene of the shooting. Ms. Simpson testified she watched the shooter get into a dark-colored *Page 4 
car parked around the corner, but was unable to tell if anyone else was in the car.
 {¶ 4} Ms. Simpson testified that within ten seconds of the shooting, she saw a man and a woman come down the street and stand over the victim, and the woman called the victim by name.
 {¶ 5} Danuiell Love testified that appellant is the father of her eight-year-old daughter. She testified that appellant was at her house in the early morning hours of May 2, 2006. She testified that appellant was with Latasha McClain, who also was indicted for aggravated murder in this case. Ms. Love, appellant, and McClain talked together on the front porch. Ms. Love testified that while the three of them spoke together, Harvey walked by, and McClain indicated that Harvey was her daughter's father. She also testified that McClain and Harvey argued for few minutes, and then Harvey walked away. She testified that immediately after Harvey walked away, appellant and McClain left in a light-colored Taurus, driving down the street in the same direction Harvey was walking.
 {¶ 6} Ms. Love further testified that less than ten minutes after appellant and McClain left, she heard a gunshot, she heard a man cry out, and she saw appellant standing over a man, shooting him several times. She testified that she recognized appellant as the shooter. She also testified that there were no other cars in the vicinity at the time of the shooting, and that appellant was *Page 5 
wearing a white t-shirt and jeans. Ms. Love testified she watched the shooter limp away from the scene, and she knew appellant limped when he walked or ran.
 {¶ 7} Ms. Love testified that she went down the street towards where the victim was lying, and she recognized him as Harvey. She then testified that the victim's cell phone rang, and she answered it. She testified that the caller was screaming that Harvey was her baby's father and was asking whether he was dead. Ms. Love testified she saw appellant and McClain in the car about an hour after the shooting, and she screamed at appellant that she had seen what he had done and told him she would not let him see his daughter again. She also testified that several days after the shooting, appellant and McClain came to her house and, at that time, she told them she had not seen anything because she was afraid of appellant.
 {¶ 8} Adrian Robinson testified that Ms. Love was his girlfriend. He corroborated Ms. Love's story about the argument between McClain and Harvey. He also corroborated Ms. Love's story that she had screamed at appellant that she had seen what he had done and that he would never see his daughter again.
 {¶ 9} McClain testified she was with appellant the evening before and the morning of the shooting. She testified appellant was wearing a white t-shirt and jeans. McClain testified that appellant had a gun that was given to him by someone named "Joe" in March 2006. McClain testified that she and appellant *Page 6 
went to Ms. Love's house around 3:00 or 4:00 in the morning on May 2, 2006. While she and appellant were at Ms. Love's house, she called Harvey, her daughter's father, to ask him to bring her some of their daughter's clothes. She testified that later that morning, Harvey walked past the house where she, appellant, and Ms. Love were sitting, and that she got off the porch and began arguing with Harvey. McClain testified that after Harvey left, she and appellant got into a car and drove down the street in the same direction as Harvey. She then testified that appellant parked the car on 126th Street and exited the car, telling her he had to use the bathroom. She testified that she heard five gunshots, and then appellant returned to the car.
 {¶ 10} McClain testified that appellant asked her if she was okay and then drove the car around the corner, where she saw the victim lying on the ground. She stated that she immediately "shut down" because she realized appellant had shot Harvey. McClain testified that after the shooting, appellant put the clothes he had been wearing that morning in a garbage bag. She testified that when detectives tried to question her about the shooting in the days that followed, appellant repeatedly coached her on what to say. McClain testified that she was afraid of appellant so she did not tell the detectives what she knew.
 {¶ 11} McClain corroborated Ms. Love's story that McClain and appellant went to Ms. Love's house to talk with her about what happened. She testified that she and appellant left for Florida six days after the shooting and while *Page 7 
there, she and appellant got married. She also testified that appellant monitored her every move. After the couple was arrested in Florida and returned to Cleveland, McClain and appellant exchanged letters from jail. McClain testified that appellant repeatedly threatened to kill her if she told anyone what happened the morning of the shooting.
 {¶ 12} McClain accepted a plea deal in which she pleaded guilty to obstruction of justice in exchange for her agreement to testify against appellant.
 {¶ 13} Detective Nate Sowa of the Cleveland Police Department testified that because the victim had money in his pockets at the time he was murdered, the murder did not appear to be a robbery. Det. Sowa also testified that during his investigation of Harvey's murder, he received several different descriptions of the car being driven by the shooter. He testified that none of the witnesses saw appellant with a gun.
 {¶ 14} At the conclusion of trial, the jury found appellant guilty of aggravated murder and the firearm specifications. The trial court sentenced him to 25 years to life, with three years on the firearm specification, to run consecutive, and five years for having a weapon under disability, to run concurrent. Appellant's aggregate sentence was 28 years to life.
 Review and Analysis {¶ 15} Appellant filed this timely appeal. He raises eight assignments of error for our review. *Page 8 
 Speedy Trial {¶ 16} "I. The defendant was denied his right to a speedy trial."
 {¶ 17} In his first assignment of error, appellant argues that his speedy trial rights were violated because the number of days between his arrest and trial exceeded the number allowed by statute. The state argues that the days were tolled by continuances requested by appellant.
 {¶ 18} R.C. 2945.71(C)(2) provides that a person against whom a felony charge is pending shall be brought to trial within 270 days after his arrest. For purposes of computing time under R.C. 2945.71(C)(2), each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. See R.C. 2945.71(E). R.C. 2945.72 sets forth several circumstances which extend speedy trial deadlines. "The time within which an accused must be brought to trial *** may be extended *** by *** [a]ny period of delay necessitated by reason of a *** motion *** made or instituted by the accused." R.C. 2945.72(E). In addition, speedy trial days may be tolled by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(H). Further, speedy trial statutes are strictly construed against the state. City of Brecksville v.Cook, 75 Ohio St.3d 53, 1996-Ohio-171, 661 N.E.2d 706. *Page 9 
 {¶ 19} Appellant has made a prima facie showing that his speedy trial rights were violated. See State v. Craig, Cuyahoga App. No. 88039,2007-Ohio-1834. Appellant was arrested on October 17, 2006 and remained in custody until he was brought to trial on July 11, 2007. Although this period of time far exceeds the statutory limitation, appellant concedes that certain acts did toll the time. Specifically, he acknowledges that on December 19, 2006, he signed a limited waiver of his speedy trial rights. It is the limitation, however, that he argues resulted in a violation of his rights.
 {¶ 20} Appellant executed a waiver of his speedy trial rights with the express limitation that his trial would commence on or before May 31, 2007. Neither party disputes that appellant's trial was originally set for March 12, 2007. The issue before this court is whether subsequent continuances at appellant's request tolled the time beyond appellant's self-limiting waiver. We hold that they do.
 {¶ 21} At the time appellant signed a waiver of his speedy trial rights, he was represented by counsel. On April 21, 2007, counsel for appellant filed a motion for continuance in order to secure phone records and get more information about the identity of a jailhouse informant whose name appellant had just learned. There is nothing in the record to indicate that counsel's request was inappropriate or unwarranted, especially in light of the fact that the phone records of several witnesses were examined at trial. We cannot infer from *Page 10 
the fact that appellant filed a pro se motion to dismiss while being represented by counsel that he opposed his attorney's decision to file a motion for continuance.
 {¶ 22} As such, we do not find that appellant's speedy trial rights were violated. Appellant's first assignment of error is overruled.
 Testimony of Spouse {¶ 23} "II. The trial court erred in allowing the defendant's wife to testify without the defendant waiving the spousal privilege and prior to the court ascertaining whether or not she knew she had the right not to testify against him and whether or not she voluntarily relinquished that right."
 {¶ 24} In his second assignment of error, appellant argues that the trial court did not inform his spouse, Latasha McClain, that she had the right to refuse to testify against him until after she had testified on direct examination.
 {¶ 25} Evid. R. 601(B) provides that a spouse is incompetent to testify against the other spouse charged with a crime unless the crime was committed against the testifying spouse or a child of either spouse, or the testifying spouse elects to testify. State v. Foster, Cuyahoga App. No. 90870, 2009-Ohio-31.
 {¶ 26} There is no dispute that McClain is appellant's wife, the couple having married in Florida after the victim was murdered and before the couple was arrested. The parties and the court acknowledged that they were aware of that fact before McClain testified. Appellant's argument is that the trial court *Page 11 
did not actively determine whether McClain was competent until after she had testified on direct examination.
 {¶ 27} In State v. Adamson, 72 Ohio St.3d 431, 1995-Ohio-199,650 N.E.2d 875, syllabus, the Ohio Supreme Court held: "Under Evid. R. 601(B), a spouse remains incompetent to testify until she makes a deliberate choice to testify, with knowledge of her right to refuse. The trial judge must take an active role in determining competency, and must make an affirmative determination on the record that the spouse has elected to testify."
 {¶ 28} We find that the trial court satisfied Evid. R. 601(B) by determining McClain was competent to testify. As part of her plea deal, McClain agreed to testify against appellant. When informed of her right not to testify, she stated to the court that she knew she had a right not to testify, but that she chose to do so anyway. There is no indication from the transcript that McClain was hesitant to testify or that, now given the choice not to testify, she would have made that choice. We find the trial court made an acceptable effort to correct the situation by questioning McClain about her deliberate choice to testify. Appellant's second assignment of error is overruled.
 Excluded Evidence {¶ 29} "III. The trial court erred by excluding evidence contained in the autopsy toxicology report that the victim had marijuana in his system at the time of his death." *Page 12 
 {¶ 30} Appellant next argues that evidence the victim had marijuana in his system is relevant and should have been admitted because it would support the defense's theory that what occurred was merely a drug deal or robbery that had gone bad. We are not persuaded by this argument.
 {¶ 31} Generally, a trial court enjoys broad discretion in admitting or excluding evidence, and a reviewing court will not reverse that decision absent a finding of abuse of discretion. State v. Williams
(1982), 7 Ohio App.3d 160, 454 N.E.2d 1334, paragraph one of the syllabus. A finding that a trial court abused its discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 32} Evid. R. 403 states: "(A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. (B) Exclusion discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."
 {¶ 33} In the case before us, there is no evidence of either a drug deal or a robbery as it relates to the murder of Harvey. Appellant was not precluded, however, from making that argument as part of his defense. The trial court granted the state's motion to exclude the toxicology report because its *Page 13 
"prejudicial effect outweigh[ed] the probative value." We agree with the state that evidence the victim had marijuana in his system only serves to put the victim on trial.
 {¶ 34} We are not convinced the evidence was relevant in the first place; however, even if it were, it was harmless error for the trial court to exclude it. There was sufficient evidence to support a conviction for aggravated murder with or without the toxicology report. There is no indication the trial court abused its discretion by excluding it. Appellant's third assignment of error is overruled.
 Failure to Provide Exculpatory Evidence {¶ 35} "IV. The state failed to comply with Crim. R. 16 when it failed to notify the defense that the police report contained a description of a potential subject that did not match the description of the defendant."
 {¶ 36} In his fourth assignment of error, appellant argues that the state failed to provide him with possibly exculpatory evidence, as required by Crim. R. 16. He specifically argues that the state knew of another possible suspect, but it did not disclose the name to the defense. We are not convinced that this information is arguably exculpatory or that appellant has proven he was prejudiced by not having the information.
 {¶ 37} Crim. R. 16(B)(1)(f) states: "Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the *Page 14 
defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment. The certification and the perpetuation provisions of subsection (B)(1)(e) apply to this subsection."
 {¶ 38} Pursuant to Brady v. Maryland (1963), 373 U.S. 83, 87,83 S.Ct. 1194, 10 L.E.2d 215, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
 {¶ 39} The issue in a case where exculpatory evidence is allegedly withheld is whether the evidence is material. In United States v.Bagley 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481, the United States Supreme Court ruled that, in ascertaining whether the prosecution improperly suppressed evidence favorable to a defendant, such evidence shall be found material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." This standard of materiality applies regardless of whether the defense specifically or generally requested the evidence or did not request the evidence at all. Id. at 682.
 {¶ 40} In State v. Jackson, 107 Ohio St.3d 53, 2005-Ohio-5981,836 N.E.2d 1173, the Ohio Supreme Court held that "prosecutorial violations of Crim. R. 16 *Page 15 
result in reversible error only when there is a showing that (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice."
 {¶ 41} We agree with appellant that it is difficult to demonstrate the state willfully withheld exculpatory material. More important though to our analysis is whether the information allegedly withheld was material and whether appellant suffered prejudice from not having the information.
 {¶ 42} Although appellant claims he suffered prejudice, it is not particularly clear how. The police report, which was not provided to defense counsel, was not admitted into evidence; instead Officer Stanard used the report to refresh his recollection. State v. Smith (1976), 50 Ohio App.2d 183, 362 N.E.2d 1239 (an accused's counsel is not entitled to inspect a written police report where an officer does not use the report while testifying, notwithstanding the fact that he read it to refresh his recollection prior to taking the witness stand). Appellant and his attorney were permitted to examine the report and still chose not to call Officer Mandzak, who prepared the report, to testify. The fact that the police interviewed another possible suspect is not enough to demonstrate prejudice to appellant, especially in this case where several witnesses testified appellant was the shooter. Appellant's fourth assignment of error is overruled.
 Manifest Weight *Page 16 {¶ 43} "V. The jury's and court's verdicts were against the manifest weight of the evidence."
 {¶ 44} In his fifth assignment of error, appellant argues that the jury verdict[1] was against the manifest weight of the evidence because there were several conflicting accounts from witnesses as to what the shooter looked like.
 {¶ 45} The court in State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717, set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence.
 {¶ 46} The Martin court stated: "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *** See Tibbs v. Florida (1982), 457 U.S. 31, 38, 42."State v. Martin, supra, at 175. Moreover, the weight of the evidence and credibility of the witnesses are primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The power to reverse *Page 17 
a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. State v. Martin, supra.
 {¶ 47} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court in State v. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442 and 64443, adopted the guidelines set forth in State v. Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926, syllabus. These factors, which this court noted are in no way exhaustive, include: (1) Knowledge that even a reviewing court is not required to accept the incredible as true; (2) Whether evidence is uncontradicted; (3) Whether a witness was impeached; (4) Attention to what was not proved; (5) The certainty of the evidence; (6) The reliability of the evidence; (7) The extent to which a witness may have a personal interest to advance or defend their testimony; and (8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary.
 {¶ 48} A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132.
 {¶ 49} It is true that there was conflicting testimony from the witnesses in their descriptions of the shooter's clothing and vehicle. The only eyewitness, Ms. Simpson, described the shooter as leaving the crime scene without a limp, while *Page 18 
other witnesses testified that appellant had a noticeable limp. It must be acknowledged, however, that the shooting took place at 5:30 a.m., when it was still dark out and colors are less distinguishable. As for appellant's limp, Ms. Love testified that the shooter "skipped" away, then ran from the scene. It would be easy to find that what looked like skipping may have actually been a person favoring one leg, as if he were limping.
 {¶ 50} Furthermore, at least two of the witnesses had a significant history with appellant. Ms. Love was the mother of appellant's daughter. McClain was his girlfriend-then-wife and was present with appellant just before and immediately after the shooting. McClain also testified regarding appellant's actions immediately after and for several days after the shooting, during the time they were in Florida, and from the letters she received from him in jail.
 {¶ 51} We are not convinced the jury lost its way in convicting appellant of aggravated murder based on the testimony it heard. The members of the jury were in the best position to weigh the evidence and assess the credibility of the witnesses. Appellant's fifth assignment of error is overruled.
 Jury Instructions {¶ 52} "VI. The trial court failed to properly instruct the jury regarding accomplice testimony."
 {¶ 53} In his sixth assignment of error, appellant argues that the trial court's instruction to the jury regarding accomplice testimony was not sufficient. *Page 19 
We disagree and find that the trial court substantially complied with R.C. 2923.03(D).
 {¶ 54} This court has previously stated that "when an accomplice testifies on behalf of the state in exchange for a plea agreement, there is a possibility the accomplice's testimony may be self-serving and biased." State v. Lett, 160 Ohio App.3d 46, 50, 2005-Ohio-1308,825 N.E.2d 1158; see, also, State v. Small, Cuyahoga App. No. 84768,2005-Ohio-1316; State v. Muntaser, Cuyahoga App. No. 81915,2003-Ohio-5809.
 {¶ 55} Trial courts are required to give a special jury instruction in situations where there is some evidence of complicity and an accomplice testifies against the defendant. State v. Moritz (1980),63 Ohio St.2d 150, 407 N.E.2d 1268; see, also, State v. Turpin, Cuyahoga App. No. 82658, 2003-Ohio-4955; State v. Johnson, 93 Ohio St.3d 240,2001-Ohio-1336, 754 N.E.2d 796.
 {¶ 56} In compliance with R.C. 2923.03(D), the trial court should have charged
 {¶ 57} the jury as follows regarding the credibility of an accomplice: "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution. It is for you, as jurors, in the light of all the facts presented to you from the witness *Page 20 
stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
 {¶ 58} In this case, the trial court instructed the jury: "You have heard the testimony from Latasha McClain, another person who was charged with the same crime charged in count one in this case, and is said to be an accomplice. An accomplice is one who assists another in the commission of a crime. Whether Latasha McClain was an accomplice and the weight to give her testimony are matters for you to determine from all the facts and circumstances in evidence.
 {¶ 59} "The testimony of a person who you find to be an accomplice should be viewed with grave suspicion and weighed with great caution."
 {¶ 60} We find that the trial court communicated to the jury the substance of R.C. 2923.03(D) in its charge. Therefore, appellant's sixth assignment of error is overruled.
 Prosecutorial Misconduct {¶ 61} "VII. The defendant was materially prejudiced by instances of prosecutorial misconduct."
 {¶ 62} In his seventh assignment of error, appellant argues that the state engaged in misconduct that resulted in an unfair trial. He specifically points to the state's failure to turn over exculpatory evidence; the improper identification of appellant by Anthony Harvey; the redaction of certain information contained in letters sent between appellant and McClain; and the state's improper *Page 21 
characterization of the murder weapon and phone calls during closing argument. We are not persuaded that any of these instances constitutes reversible error.
 {¶ 63} "A prosecuting attorney's conduct during trial does not constitute grounds for error unless the conduct deprives the defendant of a fair trial. State v. York, Cuyahoga App. No. 87814, 2006-Ohio-6934;State v. Keenan (1993), 66 Ohio St.3d 402-405, 613 N.E.2d 203; State v.Gest (1996), 108 Ohio App.3d 248, 257, 670 N.E.2d 536. The touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.Smith v. Phillips (1982), 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed. 2d 78. The effect of the prosecutor's misconduct must be considered in light of the whole trial. State v. Durr (1991), 58 Ohio St.3d 86, 94,568 N.E.2d 674. Furthermore, a prosecutor is afforded wide latitude during closing argument, and it is within the trial court's sound discretion to determine whether a comment has gone too far. State v. Benge,75 Ohio St.3d 136, 1996-Ohio-227, 661 N.E.2d 1019." (Some internal citations omitted.) State v. Johnson, Cuyahoga App. No 89504, 2008-Ohio-1716.
 {¶ 64} With respect to the issue of exculpatory evidence, we have already determined that the state's actions do not constitute reversible error. (See Assignment of Error IV.)
 {¶ 65} Next, appellant argues that the victim's uncle was unable to identify appellant at the first trial, but at the second trial, Anthony Harvey affirmatively *Page 22 
identified appellant. The state admits that it was not anticipating that Anthony Harvey would identify appellant. In any event, the court gave a curative instruction that the jury should disregard this testimony.
 {¶ 66} Curative instructions have been recognized as an effective means of remedying errors or irregularities which occur during trial.State v. Zuern (1987), 32 Ohio St.3d 56, 61, 512 N.E.2d 585. Further, juries are presumed to follow any curative instructions given by a trial court. State v. Henderson (1988), 39 Ohio St.3d 24, 33, 528 N.E.2d 1237.
 {¶ 67} There is no indication that the jury ignored the court's curative instruction or that it relied in any way on Anthony Harvey's improper identification. Anthony Harvey was not a witness to the shooting. There were several other witnesses to the shooting who were present before, during, or after the shooting who were able to identify appellant. Anthony Harvey's testimony did not deprive appellant of a fair trial.
 {¶ 68} Appellant next argues that he was denied a fair trial by the introduction of letters between him and McClain, in which certain information had been redacted. Appellant does not explain in what way he was prejudiced by the absence of redacted portions of information in the letters. Furthermore, defense counsel had an opportunity to view the letters before they were given to the jury. By not taking advantage of that opportunity, appellant cannot now complain. *Page 23 
 {¶ 69} Appellant argues that the prosecutor made false references to the gun he possessed and to phone calls made by witnesses. The prosecutor clarified his comment about the gun by explaining to the jury that the gun appellant got from "a guy named Joe" was only similar to the murder weapon, not necessarily the murder weapon. As to the phone calls, appellant does not demonstrate how these comments deprived him of a fair trial or influenced the outcome of the trial.
 {¶ 70} We find the alleged errors did not deprive appellant of a fair trial. Appellant's seventh assignment of error is overruled.
 Cumulative Effect of Errors {¶ 71} "VIII. The defendant was deprived [of] his right to a fair trial by the cumulative effect of all errors, even if any one of those errors may be determined to be harmless."
 {¶ 72} It is true that separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. In order to find "cumulative error" present, we first must find that multiple errors were committed at trial. We then must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors.State v. Djuric, Cuyahoga App. No. 87745, 2007-Ohio-413. *Page 24 
 {¶ 73} We do not find that appellant was deprived of a fair trial or that any of the alleged errors were prejudicial or affected the outcome. Therefore we overrule appellant's eighth assignment of error.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., CONCURS IN JUDGMENT ONLY; CHRISTINE T. McMONAGLE, P.J., DISSENTS (WITH SEPARATE OPINION).
[1] Although appellant's assignment of error challenges the court's verdict, appellant does not brief this issue.