[Cite as *State v. Finklea*, 2014-Ohio-1515.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100066**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ALBERT J. FINKLEA

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-11-555755-A

**BEFORE:** E.T. Gallagher, J., E.A. Gallagher, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** April 10, 2014

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Sherri Bevan Walsh
Summit County Prosecutor

BY:   Richard S. Kasay
Assistant Prosecuting Attorney
Summit County Safety Building
53 University Avenue
Akron, Ohio 44308

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Albert J. Finklea ("Albert"), appeals several rape and gross sexual imposition convictions and his consecutive sentence. We find no merit to the appeal and affirm.

{¶2} Albert was charged with 12 counts of kidnaping, 12 counts of rape, and 12 counts of gross sexual imposition ("GSI"). Some of the rape and GSI counts contained furthermore clauses that the victim was under 13 years of age at the time of the offense.

{¶3} The victim, S.F., testified at trial[1] that Albert is her father and that he raped her numerous times over the course of several years. According to S.F., the sexual conduct began in 2002 while the family was living in Macedonia, Ohio, which is located in Summit County. She was eight years old at that time and lived with her mother and father. S.F. described four different rooms in the Macedonia house where Albert touched her breasts and penetrated her vagina with his fingers. The activity often occurred on Saturdays while her mother was at work.

{¶4} The family moved to Maple Heights in 2006 when S.F. was 12 years old. Albert continued to digitally penetrate S.F.'s vagina. He also inserted his tongue into her vagina and placed his penis inside S.F.'s mouth. When S.F. turned 13 years old, Albert began having sexual intercourse with her and had anal intercourse with her at least once. S.F. testified that sometimes Albert wore a condom and other times he withdrew his penis

---

[1] The first trial resulted in a hung jury. The facts recited in this opinion were adduced at the second trial, which resulted in Albert's multiple convictions.

and ejaculated into a towel. After S.F. started using birth control at age 16, Albert ejaculated inside of her. Sometimes Albert had sexual intercourse with S.F. more than once a day.

{¶5} S.F. testified that her father was her only friend during those years. They went to movies, fishing, and bike riding together. Albert also helped her buy a truck when she was in the 11th grade, put money in her bank account, and gave her a cell phone. However, he refused to let her go out except to go to school, and he restricted her phone usage. In 2011, when S.F. was approximately 17 years old, she told her father she would no longer have sex with him. At that time, she was working long hours at Steak n' Shake and was not home as much as before. According to S.F., he became more "controlling" and ultimately took her truck away so she could not get to work.

{¶6} S.F. was angry when her father confiscated her truck. She felt as though he took her freedom away. Consequently, S.F. called the Boys Town Hotline, a national child abuse hotline. She testified that she was unable to tell her story over the phone because she had never told anyone about the abuse. After a single phone call to the hotline, S.F. reported years of sexual abuse to the Boys Town Hotline in a series of emails. She also gave the counselors her father's name and address. Boys Town counselors reported the abuse to the Cuyahoga County Department of Child and Family Services ("CCDCFS") and Lawrence Petrus ("Petrus"), a social worker with the CCDCFS, met with S.F. at school. The school called S.F.'s mother, Belinda Finklea

("Belinda"), and together, they reported the abuse to police. Albert was subsequently arrested.

{¶7} Belinda testified that she did not understand Albert's relationship with S.F. They were always together, often in the basement, and S.F. did not socialize with friends. Belinda wondered if they were having a sexual relationship when S.F. was 16 years old. However, when she asked S.F. and Albert if they were having sex, they denied it. S.F. did not to tell her mother about the abuse because she was embarrassed and afraid she would tell other people.

{¶8} After Albert was arrested, Belinda visited Albert in jail and asked him how old S.F. was when the sexual behavior started. Albert was afraid the conversation was being recorded and counted the number 12 on his fingers, indicating that S.F. was 12 years old. Belinda also had several phone conversations with Albert, which were recorded and played for the jury. In one conversation, he asked Belinda and S.F. to testify at his trial because he was facing a long prison term if convicted. In other conversations, Albert admitted he was ashamed of his behavior and told Belinda, "we are all human and the flesh is weak."

{¶9} The state moved to dismiss all the kidnaping counts and amend the dates in the indictment to conform to the evidence. The defense objected, arguing that they did not have notice of the amendments and could not adequately present a defense. The trial court granted the state's motion to amend the indictment. The defense moved for acquittal pursuant to Crim.R. 29, and the court overruled the motion. The jury found

Albert guilty of (1) four counts of rape of a child under 13 years of age in violation of R.C. 2907.02(A)(1)(b); (2) six counts of GSI of a child under 13 years of age in violation of R.C. 2907.05(A)(4); (3) seven counts of rape in violation of R.C. 2907.02(A)(2); and (4) four counts of GSI in violation of R.C. 2907.05(A)(1). Albert now appeals and raises six assignments of error.

## Sufficiency and Manifest Weight of the Evidence

{¶10} In the first assignment of error, Albert argues the trial court erred in denying his Crim.R. 29 motion for acquittal. He contends the evidence was insufficient to sustain his convictions. In the second assignment of error, Albert argues his convictions are against the manifest weight of the evidence. Although the terms "sufficiency" and "weight" of the evidence are "quantitatively and qualitatively different," we address these issues together because they are closely related, while applying the distinct standards of review to Finklea's arguments. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶11} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶12}** In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence." *Thompkins* at 387. While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id*. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses, to determine whether, "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶13}** Albert was convicted of six counts of rape of a child under 13 years of age in violation of R.C. 2907.02(A)(1)(b). R.C. 2907.02(A)(1)(b) provides, in relevant part that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age." Albert was also convicted of seven counts of rape in violation of R.C. 2907.02(A)(2), which states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Under R.C. 2907.01(A), "sexual conduct" includes both oral and vaginal sex. R.C. 2907.01(A)

further defines "sexual conduct" as "the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another."

{¶14} R.C. 2901.01(A) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." The amount of force necessary to commit rape is not fixed and depends on the parties' age, size, strength, and relation to each other. *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph one of the syllabus. In *Eskridge*, the Ohio Supreme Court found that the defendant, an adult male, had used force in raping his four-year-old daughter. In reaching this holding, the court explained:

> "Sexual activity between a parent and a minor child is not comparable to sexual activity between two adults with a history of consensual intercourse. The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose."

*Eskridge* at 59, quoting *North Carolina v. Etheridge*, 319 N.C. 34, 47, 352 S.E.2d 673 (1987). The *Eskridge* court concluded that the defendant "held a position of authority over [the victim] which did not require any explicit threats or displays of force." *Id.*

{¶15} In *State v. Schaim*, 65 Ohio St.3d 51, 600 N.E.2d 661 (1992), the court refused to extend *Eskridge* to a situation in which the defendant allegedly sexually abused

his adult daughter. Explaining the difference between children and adults, the *Schaim* court stated:

> *State v. Eskridge* is based solely on the recognition of the amount of control that parents have over their children, particularly young children. Every detail of a child's life is controlled by a parent, and a four-year-old child knows that disobedience will be punished, whether by corporal punishment or an alternative form of discipline. Because of the child's dependence on his or her parents, a child of tender years has no real power to resist his or her parent's command, and every command contains an implicit threat of punishment for failure to obey. Under these circumstances, a minimal degree of force will satisfy the elements of forcible rape.

(Citation omitted.) *Id*. at 55. Thus, where a parent retains dominance and control over a child-victim, a minimal degree of force will satisfy the force element of forcible rape.

{¶16} Albert was also convicted of five counts of GSI of a child under 13 years of age. R.C. 2907.05(A)(4) provides, in relevant part, that: "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age." Albert was also convicted of four counts of GSI in violation of R.C. 2907.05(A)(1), which provides that "[n]o person shall have sexual contact with another, not the spouse of the offender * * *when * * * [t]he offender purposely compels the other person * * * to submit by force or threat of force."

{¶17} "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). "[I]n the absence of direct testimony regarding sexual arousal or gratification, the trier of fact may infer a purpose of sexual arousal or

gratification from the 'type, nature and circumstances of the contact, along with the personality of the defendant.'" *State v. Antoline*, 9th Dist. Lorain No. 02CA008100, 2003-Ohio-1130, ¶ 64, quoting *State v. Cobb*, 81 Ohio App.3d 179, 185, 610 N.E.2d 1009 (9th Dist.1991).

{¶18} S.F. described numerous incidents of rape and GSI that occurred in her family's Macedonia home before she was 13 years of age. S.F. testified that Albert rubbed her breasts and digitally penetrated her vagina "sometimes" in her bedroom, "sometimes" in her parents bedroom, and "sometimes" in the living room. Sometimes it happened after school, sometimes it happened before school, and "[e]very Saturday it would happen." (Tr. 261-262.) According to S.F., these incidents started when she was eight years old.

{¶19} The family moved to Maple Heights when S.F. was 12 years old. S.F. testified that Albert started having vaginal sex with her during the first summer at their new house. She was 13 years old at the time. S.F. explained that before any penile penetration occurred, Albert always touched her breasts and her vagina. The second incident of vaginal intercourse occurred "days later" after the first. When asked how often they had vaginal sex once it started, she responded, "At first, it used to happen once a week, but then it happened every day, then multiple times a day."

{¶20} Albert argues there was insufficient evidence to sustain his convictions and that his convictions are against the manifest weight of the evidence because (1) there was no DNA or medical evidence establishing any rape occurred; (2) Albert never admitted or

confessed that he committed the crimes; (3) there was no evidence of child pornography to prove that Albert is a pedophile; and (4) the allegations cannot be true because someone would have discovered the abuse if it really happened over so many years. He also asserts that S.F. fabricated the accusations because she was angry that her father confiscated her truck. However, a rape victim's testimony is admissible without corroboration. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 53.

**{¶21}** S.F. testified that Albert penetrated her vagina more than four times while the family lived in Macedonia, Ohio, and that he had vaginal intercourse with S.F. at least twice before she was 13 years of age at their Maple Heights home. Her testimony also established that at least seven rapes occurred after she turned 13 years of age.

**{¶22}** Although S.F. was not a toddler like the child in *Eskridge*, Albert held an authoritative position in her life. She testified that he was very strict and that he was her only friend since she was not permitted to socialize with friends outside of school. Thus, Albert maintained dominance and control over S.F., who was still a young child. Under these circumstances, explicit threats and displays of force were not necessary to effect his purpose. *Eskridge*, 38 Ohio St.3d at 59, 526 N.E.2d 304.

**{¶23}** S.F. specifically testified that the following acts of rape occurred at least once in each of the following rooms of the family's Maple Heights house: vaginal sex and oral sex in her bedroom; digital penetration under 13 years of age in her bedroom; digital penetration under 13 years of age and vaginal penetration in her parents' bedroom;

vaginal sex from behind while S.F. looked out the window in the living room; digital penetration in the living room; anal penetration in the basement; and vaginal sex on pool table, couch, and love seat in the basement. Each incident began with Albert touching S.F.'s breasts and vagina. S.F. also testified that Albert had sexual intercourse with her when she was 13, 14, 15, and 16 years old. Therefore, there is sufficient evidence to support every rape and GSI conviction. Once admitted, the jury is free to give S.F.'s testimony whatever weight they find appropriate under the circumstances.

{¶24} The jury found S.F.'s testimony credible. In addition to their assessment of S.F.'s credibility while testifying, her testimony was corroborated by circumstantial evidence. For example, S.F. testified that Albert repeatedly raped her in the basement of their Maple Heights home. Belinda testified she was concerned that S.F. was always in the basement with her father instead of playing with friends, especially on sunny days. She also testified that she found condoms in the basement and she was concerned when she returned home one evening and discovered S.F. and Albert in the basement with the door shut.

{¶25} Belinda initially doubted the truth of S.F.'s accusations. However, she believed S.F. after S.F. accurately described Albert's penis, which has an unusual appearance. Moreover, Albert admitted that he engaged in sexual activity with S.F. when he indicated that it started when she was 12 years old.

{¶26} Although he did not admit he committed any particular crime or how many sex acts he committed, his acknowledgment that he started engaging in sexual activity

with S.F. when she was 12 further corroborates S.F.'s testimony. The jury also heard recorded jail conversations between Albert and Belinda in which he urged her not to come to court to testify and admitted he was ashamed of his behavior. He offered the excuse that he was human and "the flesh is weak."

{¶27} The evidence adduced at trial weighs heavily in favor of Albert's guilt for all of his convictions. Therefore, we cannot say that the jury lost its way and created a manifest miscarriage of justice.

{¶28} Accordingly, the first and second assignments of error are overruled.

## Witness's Improper Comments

{¶29} In the third assignment of error, Albert argues that Petrus's testimony determining S.F.'s case was "indicated" deprived him of a fair trial because it expressed an opinion about S.F.'s truthfulness. He also asserts he was denied his right to a fair trial because Belinda testified that she knew S.F. was "telling the truth" when she accurately described Albert's unusual penis. Albert contends these witnesses' statements violated the Ohio Supreme Court's directive in *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989).

{¶30} In *Boston*, the Ohio Supreme Court held that a witness may not offer an opinion as to the truth of a child-victim's statements. *Id.* at syllabus. However, the court also held that an expert may offer an opinion as to whether he or she believes the victim was actually abused because expert testimony on the ultimate issue of whether sexual abuse has occurred in a particular case is helpful to jurors and is therefore

admissible pursuant to Evid.R. 702 and 704. *Id*. at 119. The court further explained that experts are not limited to just persons with scientific or technical knowledge but include other persons with "specialized knowledge" gained through experience, training, or education. *Id.* Thus, in child abuse cases, "experts, properly qualified, might include a priest, a social worker, or a teacher, any of whom might have specialized knowledge." *Id*.

{¶31} Albert does not challenge Petrus's qualifications as a social worker. And despite Albert's assertions to the contrary, Petrus expressed no opinion as to S.F.'s truthfulness. Petrus simply testified that he formed an opinion that her case was "indicated," which he explained means that the victim made a "good disclosure" but there is no medical evidence to support it. Petrus also explained that "indicated" means something more than "unsubstantiated," but less than "substantiated." It was not an opinion on S.F.'s veracity. Therefore, Petrus's testimony did not violate the Supreme Court's directive in *Boston*.

{¶32} Belinda's statement that she knew S.F. was telling truth when S.F. described Albert's penis as unusually small is an opinion about S.F.'s truthfulness. However, Albert's trial counsel failed to object to it and therefore waived all but plain error. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 52. Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial

clearly would have been different but for the error. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus.

{¶33} Albert cannot establish that Belinda's comment about S.F.'s truthfulness rose to the level of plain error. S.F. testified at trial and was subject to cross-examination. "*Boston* does not apply when the child victim actually testifies and is subjected to cross-examination." *State v. Benjamin*, 8th Dist. Cuyahoga No. 87364, 2006-Ohio-5330, ¶ 19, quoting *State v. Curren*, 5th Dist. Morrow No. 04 CA 8, 2005-Ohio-4315, ¶ 26. In *Boston*, there was no independent indicia of reliability except for the expert witness who vouched for the child-victim because the victim did not testify at trial. However, when the child victim testifies, the trier of fact is able to assess her credibility. *Benjamin* at ¶ 16.

{¶34} Here, because S.F. testified at trial, the jury was able to evaluate S.F.'s credibility and decide for themselves whether she was telling truth. Furthermore, as previously stated, there was circumstantial evidence corroborating S.F.'s testimony that weighed heavily in favor of a guilty finding. We therefore cannot say that Belinda's comment about S.F.'s truthfulness constituted plain error.

{¶35} Accordingly, the third assignment of error is overruled.

**Spousal Competency**

{¶36} In the fourth assignment of error, Albert argues the trial court committed plain error when it failed to determine Belinda's competency to testify in accordance with Evid.R. 601. In the fifth assignment of error, Albert argues his trial counsel was

ineffective for failing to object to Belinda's testimony without the required competency determination. We discuss these assigned errors together because they are interrelated.

{¶37} As previously stated, the appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the alleged plain error. *Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 at paragraph two of the syllabus. To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation; and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington,* 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶38} Evid.R. 601(B) provides:

Every person is competent to be a witness except:
* * *
(B) A spouse testifying against the other spouse charged with a crime except when either of the following applies:
(1) A crime against the testifying spouse or a child of either spouse is charged;
(2) The testifying spouse elects to testify.

{¶39} In *State v. Adamson*, 72 Ohio St.3d 431, 650 N.E.2d 875 (1995), the Ohio Supreme Court explained that the 1991 amendments to Evid.R. 601 gave the testifying spouse the power to decide whether or not to testify against the accused spouse. *Id*. at 434. Previously, the accused spouse was the exclusive holder of the privilege. *Id*. Now, "a spouse remains incompetent to testify until she makes a deliberate choice to

testify, with knowledge of her right to refuse." *Id.* at syllabus. Thus, once the trial court determines that a witness is married to the defendant, the trial court must instruct the witness on spousal competency and make a finding on the record that he or she is voluntarily choosing to testify. R.C. 2945.42; *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 54; *Adamson* at syllabus.

{¶40} Contrary to Albert's assertions, the record reflects the trial court made a competency determination on the record. Before Belinda testified in the second trial, the prosecutor stated on the record that she previously waived the spousal privilege in the first trial that resulted in a hung jury. The court inquired of defense counsel his position on the waiver, and counsel replied, "We'll be consistent with the prior case with regards to the waiver." In the first trial, the court held a competency hearing pursuant to Evid.R. 601 prior to the trial. During the hearing, the following exchange took place:

> THE COURT: Do you understand that you don't have to testify against your spouse?
>
> THE WITNESS: I understand.
>
> THE COURT: And do you understand that you, however, can choose to testify against him under certain circumstances, and those circumstances exist here?
>
> THE WITNESS: Mm-hmm.
>
> THE COURT: Are you going to testify against your spouse?
>
> THE WITNESS: Yeah. I think I should, yeah, protect my daughter. I think that I should testify against my husband.
>
> THE COURT: All right. Well, Miss Finklea, I know that you think you should, but are you going to do that in this trial?

THE WITNESS: Yes.

The record reflects that the trial court took an active role in determining whether Belinda knowingly and intelligently made the decision to testify against her husband. The trial court made an affirmative determination on the record that she elected to testify in accordance with Evid.R. 601(B)(2).

{¶41} Even if the competency determination from the first trial were inadequate with respect to the second trial, Belinda was also competent to testify under Evid.R. 601(B)(1). Under Evid.R. 601(B)(1), the spouse-witness may testify against the accused spouse if the testifying spouse or a child of either spouse is a victim of the crime charged. In this case, Belinda's daughter was the victim of all the charges against Finklea. Thus, Belinda was competent to testify against Finklea under Evid.R. 601(B)(1).

{¶42} The trial court made a competency determination as required by Evid.R. 601(B)(2), and Belinda was competent under Evid.R. 601(B)(1). Therefore, there was no plain error as a result of Belinda's testimony against Albert, and Albert was not denied his constitutional right to the effective assistance of counsel.

{¶43} Accordingly, the fourth and fifth assignments of error are overruled.

**Consecutive Sentence**

{¶44} In the sixth assignment of error, Albert argues the trial court erroneously imposed a consecutive prison sentence without making the findings required by R.C. 2929.14. He contends the court erred when it ordered consecutive sentences on the felonious assault counts. However, Albert was not convicted of any counts of felonious

assault. Presumably he means to challenge the consecutive sentences imposed on his rape and GSI convictions.

**{¶45}** R.C. 2953.08(G)(2) states that when reviewing prison sentences, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Instead, the statute permits the appellate court to reverse the trial court's imposition of consecutive sentences upon an offender if we "clearly and convincingly" find that, (1) "the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)]" or that, (2) "the sentence is otherwise contrary to law." *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶ 11.

**{¶46}** R.C. 2929.14(C)(4) requires a sentencing judge to make three distinct findings before imposing consecutive sentences, in addition to whatever findings the judge makes with respect to the purposes and goals of sentencing. *Id*. at ¶ 17. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(C)(4). Second, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id*. Finally, the trial court must find that at least one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single

prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶47}** As this court explained in *Venes*, compliance with R.C. 2929.14(C) "requires separate and distinct findings in addition to any findings relating to purposes and goals of criminal sentencing." *Id.* at ¶ 17, citing *State v. Jones*, 93 Ohio St.3d 391, 399, 754 N.E.2d 1252 (2001). The failure to make these findings on the record at the sentencing hearing is "contrary to law." *Venes* at ¶ 12.

**{¶48}** At the sentencing hearing, the court stated:

In this case, as I've indicated, it's difficult to even begin to fathom a more serious set of circumstances or facts, so I find that consecutive sentences are necessary to protect the public from future crimes and, more specifically, to punish you. The grave damage that you have done to this child and your family, that's on you.

These consecutive sentences are not disproportionate to the seriousness of your conduct and the danger that you pose to the public.

I further find that there were multiple offense that occurred over a very long period of time, and that this was a continuing course of conduct. And, of course, the harm caused by the offenses was so great or unusual that truly no single prison term for any of these offenses would adequately reflect the seriousness of the conduct.

**{¶49}** The record reflects that the trial court made separate and distinct findings justifying the imposition of consecutive sentences in accordance with R.C. 2929.14(C)(4) and *Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, *supra*.

**{¶50}** Therefore, the sixth assignment of error is overruled.

**{¶51}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the common pleas court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
TIM McCORMACK, J., CONCUR